BENNERS *vs.* HARRISON and WILSON.

Where A. agrees with B. that B. shall buy such lands as they please, in B's name and on his responsibility, and that A. shall not be responsible for any liabilities or acts of B., except that so far as cash capital shall be placed in the hands of B. that capital shall be subject to its proportion of the losses, A. is liable for services rendered by another as clerk and book-keeper in conducting the joint business of the associates.

THIS was an appeal, by the defendant Harrison, from a judgment entered upon the report of a referee. On the 4th of November, 1838, an agreement was made between the defendants, James Harrison and James Glasgow, partners, under the name of Glasgow & Harrison, and the defendant John Wilson, under which the firm advanced to Wilson a capital of $6000, to be laid out in land speculation; the profits of which were to be divided among them in a specified proportion. In this agreement it was however stipulated, that Glasgow & Harrison were to be in no manner liable or responsible for any losses beyond the capital contributed by them. On the 25th of December, 1839, a new agreement was made, referring to the previous one, extending the capital to $40,000, divided into shares of $1000 each; and providing for a still further increase of capital to $10,000 more, if Wilson, or Glasgow & Harrison, should think proper. The profits of the operations to be divided, and

the losses borne in certain specified proportions ; Harrison and his associates two-thirds, and Wilson one-third. The association was denominated a copartnership, and unless sooner dissolved by mutual consent, it was to continue for two years. It continued in existence and operation under this contract in the city of New York until the fall of 1844, when Harrison, who had previously bought out Glasgow, sold out to Wilson. The plaintiff was employed by Wilson as book-keeper and general clerk of the company, from Sept. 1842, to March, 1845; and brought this action to recover for those services. The referee reported in his favor for the sum of $1711.88.

*W. M. Evarts*, for the appellant. I. The plaintiff was employed by the defendant Wilson, and there is no pretense that the defendant Harrison ever retained or employed the plaintiff, or promised to pay him. The defendant Wilson never retained or employed the plaintiff in the name of Harrison, nor in the joint names of himself and Harrison, nor in any name ever made an express promise to pay, or stipulated for a rate of compensation. II. As between the defendants themselves, it was an express and fundamental stipulation of the business, that it was to be done by Wilson, in his own name, and on his responsibility, for all liabilities, and Harrison was not to be a party to, or responsible for, any acts or liabilities of Wilson. This stipulation was never infringed in the actual conduct of the business. Harrison never held himself out, nor was he held out by Wilson, as a partner or joint promisor, in any contract or liability. III. In the absence of any actual contract with the plaintiff by the defendant Harrison, acting for himself, or through any agent, the only possible ground of liability is, as a dormant partner, on the principle of mercantile partnership. A joint interest in the purchase and sale of real estate does not create a partnership, with the rights, powers, duties and responsibilities of partners under the law merchant. (*Story on Partnership*, §§ 82, 83. *Collyer on Partnership*, § 3, *n.*, § 51, *n.* *Potts* v. *Waugh*, 4 *Mass. R.* 424. *Patterson* v. *Brewster*, 4 *Edw.* 352. *Sage* v. *Sherman*, 2 *Comst.* 417.)

*J. D. McGregor*, for the plaintiff. I. The defendants were engaged, under a written contract, in a general adventure for the purchase and sale of lands ; the profits of the speculation to be divided, and the losses borne in specified proportions ; Harrison two-thirds, Wilson one-third. If a partnership can be in any manner formed among persons who connect themselves together for the purpose of speculating in lands, for their mutual profit and advantage, the association of the defendants was clearly a partnership. (3 *Kent, 6th ed.* 23. *Story on Part.* § 2.) (1.) Partnerships may be formed for the buying and selling of lands on joint account, and for the joint benefit of the parties, by way of commercial speculation and commercial adventure. (*Story on Part.* § 83. *Smith* v. *Burnham*, 3 *Sumner*, 435, 458, 71. *In re Warren, Davis*, 323. *Dale* v. *Hamilton*, 5 *Hare*, 369. *Kramer* v. *Arthur*, 7 *Barr's Penn. R.* 165, 171. 3 *Kent.* 28. *Sage* v. *Sherman*, 2 *Coms.* 429, 30.) (2.) The alleged doctrine that "there can be no partnership in land," is confined to a mere *community of interest in the land itself*, and does not extend to *cases of general speculations in lands as a commercial adventure*, where the parties have *a community of interest in the profits only.* (*Porter* v. *McClure*, 15 *Wend.* 187.) The better opinion now is, that even land itself, purchased with partnership funds, for partnership purposes, will be regarded in equity as partnership stock. (3 *Kent*, 37. *Sigourney* v. *Munn*, 7 *Conn. R.* 11.) (3.) Harrison was in no sense a "dormant partner." His connection with the concern was *ostensible, notorious and active ;* nor does the contract contain any restriction against the use of his name in the business of the company. (3 *Kent, 7th ed.* 31. *Story on Part.* § 80. *U. S. Bank* v. *Binney*, 5 *Mason*, 176, 185.) The rule, therefore, that "the ordinary doctrine relating to *dormant partners* is not applicable to partnerships formed for speculations in the purchase and sale of lands," has no application to this case. (*Pitts* v. *Waugh*, 4 *Mass. R.* 424. *Smith* v. *Burnham*, 3 *Sumner*, 435, 470, 71. *Story on Part.* § 83.)

II. Whether the defendants were partners or not, as to third parties dealing with them in their general business, the plain-

tiff was engaged in their joint business, as book-keeper and general clerk of the company, with their knowledge and approbation, and they are therefore jointly liable in this action. (1.) The contract between the defendants constituted Wilson agent of the other stockholders, to transact the principal portion of the business of the company, and fully authorized him to employ the plaintiff in their joint business. Wilson's authority to bind himself and Harrison for such a purpose, was necessarily included in and incident to the power and duty conferred upon him by the contract, and indispensable to the proper and complete performance of that duty. (2.) There can be no pretense that the connection of Harrison with the concern as a principal, was not disclosed, and that the plaintiff rendered his services upon the mere individual credit of Wilson. Harrison's association with Wilson was generally notorious. No effort was made to conceal it. It was put forth in the shares of stock issued, and whatever responsibility or credit the company at any time had, arose from Harrison's connection with it. All the other incidental expenses of carrying on the business were paid out of the funds of the company. The payments to the plaintiff, proved by the defendant, were credited from time to time in the books of the company. (3.) The course pursued by Wilson in managing the affairs of the company, (had it been originally unauthorized,) was fully approved and ratified by Harrison. The employment of the plaintiff, in particular, was known to Harrison, and approved by him.

III. The value of the plaintiff's services, as estimated by the referee after a consideration of all the circumstances, was very moderate, and even small, and will not be disturbed by the court on this appeal.

*By the Court,* MITCHELL, P. J. One question discussed in this case was, whether one could be liable as a dormant partner, who had agreed with another that the latter should buy such lands as they pleased, in his own name and on his own responsibility, and that the former should not be responsible for any liabilities or acts of the latter, except that so far as cash

capital should be placed in the hands of the other, that capital should be subject to its proportion of the losses.

In *Pitts* v. *Waugh and Greeley,* (4 *Mass.* 424,) a note had been given by Waugh in his own name for land bought in his own name, and it was held, that even if it were found that there was a partnership between Waugh and Greeley to buy lands, Greeley would not be liable. The reasons assigned were, that the law as to dormant partners was confined to trade and commerce, and did not extend to the purchase and sale of lands, and that the alleged dormant partner could have no *title to the land.* It is true, he would have no title at law to the land, but, in this state, (however it may have then been in Massachusetts,) he would have a title, in equity, and could enforce it, to the land. The court also said, that there was " no evidence offered that Greeley knew of the purchase or did or could derive any benefit from it," although they adopted the broad grounds above stated, as they said, to prevent mistake. Here the dormant partner knew of the purchases, and then received the benefit of them. The Massachusetts court would probably have ruled differently if such facts had existed in that case. They said that the contract was not signed by any one authorized by Greeley; these acts would probably have been considered by them evidence of authority to sign, and of ratification of the signature.

In *Patterson* v. *Brewster, Havens and others,* (4 *Edw.* 352,) a bill was filed to compel persons who had associated for the purpose of purchasing lands, and having the title, in the name of trustees, to pay the deficiencies on bonds and mortgages executed by the trustees to the seller of the lands—the trustees having become insolvent.

The vice chancellor inferred that the sale was on the personal responsibility of the trustees, and on the security of the mortgages, and held that if the associates would have been liable, the taking of the bond of the trustees (a higher security) discharged them from this liability, and that a court of equity should not interfere, as the complainant, if he had any remedy, could enforce it at law. The learned vice chancellor had, however, previously said in that case that " *it appeared* to him that,

considering the object of this association, it was not to be deemed a partnership, in the mercantile sense of the term, with the rights, powers, duties and responsibilities of partners belonging to the associates, under the law merchant;" that "for the sake of convenience, and the easier management of all partnership concerns, whether it be in the trade of buying and selling merchandise, or manufacturing, *or in the business of working lands,* either for *agricultural* or *mining* pursuits, one partner has the power to bind all by any contracts he may make which are within the scope of their partnership business; but that this cannot be the law in the mere business of *buying and selling lands.*"

These remarks were not essential to the decision of the case, and the cause was carried to the court of appeals; and while it was pending there, Justice Strong, in delivering the opinion, in the result of which the majority of the court concurred, dissented from the vice chancellor in the last part of his opinion, and stated that this opinion of the vice chancellor was expressed as a doubt and partial denial only. (*Sage* v. *Sherman*, 2 *Comst.* 430.) Justice Strong argued strongly in that case that there may be a partnership in buying and selling lands, with all the liabilities of partners, and he quoted the cases of *Terrill* v. *Richards*, (1 *Nott & McCord*, 20;) *Sigourney* v. *Mann*, (7 *Conn.* 11;) *Robinson* v. *McCrowder*, (4 *McCord*, 519;) *Dudley* v. *Littlefield*, (8 *Shepley*, 44;) *Brady* v. *Kalkam*, (1 *Penn. R.* 147;) *Kramer* v. *Arthur*, (7 *Barr's Penn. R.* 165;) as sustaining his views.

Where there is such diversity of opinion, and no decision binding in this state, it is inexpedient to express an opinion unnecessarily, in the case before us. It may be that when four or more persons agree to buy lands as tenants in common, and to pay cash for them on the delivery of the deed, neither buyers nor sellers would consider either buyer liable to pay more than his aliquot share; yet if all did not pay in full, it is very clear that the seller would not be bound to convey to any. And if the sale was to be partly on credit, it is equally clear that according to the established usage the buyers would be expected to give their joint and several bonds and mortgages on the whole

Benners *v.* Harrison.

property, for the whole amount left unpaid.  So it may fairly be discussed whether, where parties agree to buy and sell lands, and to share the profits, a purchase made by one of them without the approbation of the others, and without their receiving any benefit from it, would bind them, (as they would be bound, if the agreement had related to merchandise,) on the ground that the purchase was within the scope of the general terms of the partnership.  But in this case the plaintiff presents himself in a very different character.  He was a clerk employed by the active associates to keep the books of the concern, containing the accounts of sales and purchases, and attending to other matters necessary for the transaction of the business into which the associates had entered.  Their case can be no better (as against him) than if they had caused the lands to be conveyed to them, and so had become tenants in common of the lands.  As tenants in common, neither could bind the other by any contract which he alone should make; but if tenants in common have one agent whose business is to collect their rents, and pay out expenses for repairs, taxes, assessments, clerk-hire and office rent, and the whole affair should turn out a loss, his right to recover for that loss and for his services, would be against all jointly and not against each separately, for his proportionate share only.  In this it is like lands held by partners for mining purposes.  For any matter connected with those purposes, one partner may bind the other, and all are jointly bound, although it might be questionable whether they would be bound jointly for the purchase money of other lands bought for the same purpose, without proof of their assent to the new purchase.

So, although the part owners of a ship are tenants in common and not partners, yet they are jointly liable for repairs and supplies to the vessel, and for the wages of the master and crew ; and they may be liable as partners by arrangements among themselves, so that one shall have a lien on the share of any other part owner on the funds in his hands, for any balance due to him.  (*See Mumford* v. *Nicoll,* 20 *John.* 611.)

This claim is not for purchase money of lands bought without the concurrence of the associates, but for mercantile services

necessary for all, and rendered for the benefit of all the associates in purchases and sales made for their joint benefit.

The judgment in favor of the plaintiff is affirmed with costs.

[NEW YORK GENERAL TERM, November 6, 1854. *Mitchell, Roosevelt* and *Clerke,* Justices.]