GEORGE F. CHESTER et al, Respondents, v. JOHN S. DICKER-SON et al, Appellants.

|  54 | 1 |
|-----|-----|
| 109 | 285 |

| 54 | 1 |
|-----|-----|
| 111 | 436 |

| 54 | 1 |
|-----|-----|
| 139 | 330 |

A partnership may exist between dealers and speculators in real estate for the purpose of buying and selling lands.

*It seems* it is not necessary to the existence of such a partnership that it be evidenced by a written agreement signed by the partners; it may be created by parol.

Partnerships in real estate transactions are governed by the same rules as are commercial and other copartnerships, save as modified by the rules of law in reference to the conveyance and transmission of real estate

*Pitts* v. *Waugh* (4 Mass., 424), disapproved, and *Patterson* v. *Brewster* (4 Ed. Ch., 322), limited.

While one partner cannot convey the whole title to real estate of the firm unless it is vested in him, he may, as general agent of the firm, enter into an executory contract to convey, which a court of equity will enforce, and this although the partnership is by parol, as an agent to convey may be appointed by parol.

Where, therefore, a fraud is perpetrated by one of the members of such a partnership in the transaction and prosecution of a partnership enterprise, the statute of frauds presents no obstacle to relief against all the partners therefor, and they all are liable, although the others had no connection with, knowledge of, or participation in the fraud.

(Argued January 17, 1873, decided March term, 1873.)

APPEAL by defendants, John Dickerson and Edgar Reed, from judgment of the General Term of the Supreme Court in the second judicial district, affirming a judgment in favor of the plaintiffs, entered upon a verdict, and affirming an order denying a motion for a new trial. (Reported below, 52 Barb., 349.)

The action was brought for alleged fraud and deceit in the sale of lands.

The complaint alleges that the defendants, Dickerson, Reed, Jones, and a fourth defendant named Dewint, who died during the pendency of the action, conspired to induce the plaintiffs to purchase, as oil-producing lands, certain lands in the county of Dutchess, and State of New York, being three farms in the town of Fishkill, known as the Bogardus, the Scofield and the Jones farm. That the defendants secretly poured petroleum upon said lands for the purpose of inducing the plaintiffs to believe that such oil was the spontaneous production of said lands, and falsely represented to the plaintiffs that the oil which they had so put on said lands was the natural product of the same. That the plaintiffs were thus induced to believe that such lands were oil-producing lands, and on the 24th of December, 1864, paid to the defendants the sum of $39,000 for certain contracts, for the purchase of said lands, which had been previously entered into by said defendants with the owners thereof.

The evidence of fraud upon which the plaintiffs relied, and upon which the verdict mainly was found, consisted of the testimony of a person named Benjamin Higgs, who testified that he was employed by the defendants, Jones and Reed, to put petroleum upon these lands from time to time, frequently, in the fall of 1864, and the winter following, for the purpose of giving them the appearance of oil-producing lands.

On the 28th day of November, 1864, the defendants entered into a written agreement, signed by all of them, in which they agreed to purchase, lease and take refusals of lands on

their joint account, in the town of Fishkill, situate and lying along the Fishkill creek, specifying particularly the Bogardus farm, the Scofield farm and the Jones farm, and also " such other parcels or farms along said creek as they may consider to be to their mutual advantage," and that they should sell, lease or work the lands thus taken ; and they further agreed that all moneys expended and all loss sustained by reason of such purchases, leases or refusals and the working thereof, should be borne equally amongst them, share and share alike, and that all the gains and profits thereof should be shared in the same way ; and that all the leases and refusals thus made and thereafter to be made, should be taken in the name of defendant Reed, for the equal benefit of all the parties. There was some evidence tending to show that this association or partnership was actually formed by parol, as early as September, 1864. On the 29th day of October, 1864, Bogardus executed a contract with Reed, giving him the refusal of his farm of forty-seven and one-half acres of land, at $100 per acre, until the first day of January then next ; on the twentieth day of October, Scofield executed a contract with Reed, giving him the refusal of his farm of sixty acres, at $100 per acre, until the fifteenth day of March then next ; and on the 15th day of December, 1864, Reed obtained an assignment of a contract for the Jones farm of 143 acres, at $150 per acre. About the 1st day of December, 1864, the defendant Reed opened negotiations with the plaintiffs to sell these lands to them, and represented to them that they were oil-producing lands, and took one of the plaintiffs upon the lands and showed him the indications of oil thereon, which had been produced by pouring petroleum thereon, representing and holding out to the plaintiff that the oil found there was the natural product of this land. On the tenth day of December, Reed proposed to plaintiffs to sell them these three farms, and, on the twelfth of December, the plaintiffs accepted the proposition, and, subsequently, paid to the defendants, which was divided equally between them, $39,000 for the refusals of the Bogardus and Scofield farms, and the contract for the

Jones farm. On the twentieth of December, Reed assigned to the plaintiffs the refusals and contract, by a formal written assignment, and the plaintiffs thereafter paid for and took conveyances of the farms from the owners thereof.

It appeared upon the trial that Jones was the defendant principally engaged in perpetrating the fraud, by causing the deceptive appearance of oil upon the lands. There was some evidence also tending to show that Reed participated, to some extent, in this fraud. But there was no evidence whatever that Dickerson had anything whatever, personally, to do with the fraud, or that he knew that any fraud was practiced.

At the close of plaintiff's evidence, and again at the close of all the evidence, a motion was made, on behalf of defendant Dickerson, to dismiss the complaint as to him, on the ground that there was no evidence to connect him with the alleged fraud, and the motion was denied, and Dickerson excepted.

The court charged the jury that the defendants were partners under their written agreement dated November 28, 1864, and submitted to them to find whether they did not become such prior to that date, by oral agreement, and he charged that each defendant was liable for the fraud personally committed by him, and that from the time they became partners, all were liable for the fraud committed by either in and about the partnership business. Exceptions were taken by defendants to the charge.

The defendants requested the court to charge " that every one of the defendants must be acquitted by the jury, and have a verdict in his favor unless the jury believe that he personally made, or procured to be made, the false representations charged in the complaint, and thereby induced the plaintiffs to make the contract with the defendants." The court refused so to charge, and the defendants excepted.

The defendant Dickerson requested the court to charge:

1. That the jury must find a verdict in his favor, there being no evidence whatever that he had any concern in or knowledge of any fraudulent acts or representations whatever.

2. That he is not responsible and cannot be made liable to the plaintiffs for any fraudulent acts or representations made or procured by the defendant Jones or any other person, unless with the knowledge or procurement either of Reed or himself, even if the jury should believe that such acts or representations were made.

3. That the jury must find a verdict in favor of the defendant Dickerson, unless they believe that he personally knew or consented to some fraudulent act or representation to the plaintiffs which procured the sale. The court refused so to charge as to each request, and there was an exception.

There were other exceptions to the rulings of the judge during the progress of the trial, which, so far as important, are noticed in the opinion.

*James Emott* for the appellants. Defendants were not, as partners, liable for the torts or contracts of each other, as are partners in a mercantile firm. (*Patterson* v. *Brewster*, 4 Edw. Ch., 352; *Pitts* v. *Waugh*, 4 Mass., 424; *Alger* v. *Raymond*, 7 Bosw., 418; *Coles* v. *Coles*, 15 J. R., 159; *Stewart* v. *Mackeney* [E. R.], 6 Eq. Cas., 479; S. C. on appeal [E. R.], 4 Ch. App., 603; *Porter* v. *McClure*, 15 Wend., 137; *Buchan* v. *Sumner*, 2 Barb. Ch., 165; *Smith* v. *Jackson*, 2 Edw. Ch., 28; *Collumb* v. *Read*, 24 N. Y., 505; *Pierce* v. *Jackson*, 6 Mass., 245; *Sherwood* v. *Warnick*, 5 Greenl., 295; *Hutchins* v. *Turner*, 8 Humph., 415; *Wayland* v. *Elkins*, 1 Starkie N. P. R., 272; Collyer on Part., §§ 456–461; Story on Part., §§ 167, 168; *Chamberlain* v. *Prior*, 2 Keyes, 539; *Fogerty* v. *Jordan*, 2 Robt., 319.) The court erred in holding that the partnership of defendants in the lands could exist by parol. (Story on Part., § 83; 1 Kent's Com., 173; 3 id., 38; 3 Denio, 125; 4 Edwds. Ch., 352; 4 Mass., 424; 7 Bosw., 41; 15 J. R., 159; *Hoxie* v. *Carr*, 1 Sumn., 173; *Smith* v. *Burnham*, 3 id., 345.)

*A. Anthony* for the respondents. Defendants are, as partners, jointly and severally liable for the frauds committed by one partner in partnership transactions, although they did not

have any connection with, knowledge of, or participation in the frauds. (Story on Part., § 108; Collyer on Part. [Perkins' ed.], 401; 25 N. Y., 597; *Durst* v. *Burton*, 47 id., 167; affirming 2 Lans., 143; *Horn* v. *Nichols*, 1 Salk., 298; *Chemung Canal Bk.* v. *Bradner*, 44 N. Y., 680; *Baum* v. *Mullen*, 47 id., 577; *Elwell* v. *Chamberlain*, 31 id., 611; *Smith* v. *Tracy*, 36 id., 79; 13 Wend., 520; *Hawkins* v. *Appleby*, 2 Sandf., 421; *Manufacturers' Bank* v. *Gove & Graffon*, 15 Mass., 75; *Willett* v. *Chambers*, 2 Cow., 814; *Eager* v. *Barnes*, 31 Beav., 582; *Smith* v. *Carlton*, 2 Barb. Ch., 336; *Stortswell* v. *U. S.*, 13 Wal., 531.) A partner is also liable for false representations of his copartner. (*Sweet* v. *Bradley*, 24 Barb., 549; *Marsh* v. *Keating*, 1 Scott, 5; *Locke* v. *Stearns*, 1 Metc. [Mass.], 563; *St. Aubyn* v. *Smart*, 3 Ch. App., 647; *Patten* v. *Garney*, 17 Mass., 182; *White* v. *McGill*, 2 Metc. [Ky.], 262: *Hadfield* v. *Jameson*, 2 Munf., 66, 67; *Griswould* v. *Haven*, 25 N. Y., 597; *Crawford* v. *Willins*, 4 Dall., 268; *Durst* v. *Burton*, 47 N. Y., 167; *C. C. Bk.* v. *Bradner*, 44 id., 680.) A valid partnership with lands for its object, may be created by parol. (*Foster* v. *Hale*, 5 Vic., 309; *Essex* v. *Essex*, 20 Beav., 449; *Dale* v. *Hamilton*, 5 Hare, 369; *Smith* v. *Tarlton*, 2 Barb. Ch., 336; *Olcott* v. *Wing*, 4 McLean, 15.) A partnership may for months exist by parol, and afterward the partnership agreement be reduced to writing. (1 Man. & G., 155; *Vere* v. *Ashly*, 10 Barn. & Cresswell, 288; 21 Eng. C. L., 127; *Foster* v. *Hale*, 5 Vesey, 309; *Essex* v. *Essex*, 20 Beav., 449; *Dale* v. *Hamilton*, 5 Hern., 369; affirmed 2 Ph., 266.) If defendant, Dickerson, shared in the proceeds of the sale to plaintiffs he is chargeable with a ratification of the fraud, even though ignorant of the facts. (*Bennett* v. *Judson*, 21 N. Y., 238; *Elwell* v. *Chamberlain*, 31 id., 611; *Doggett* v. *Emmerson*, 3 Story, 700; *Brass* v. *Worth*, 40 Barb., 654; *Smith* v. *Tracy*, 36 N. Y., 79.)

EARL, C. It cannot be questioned that two or more persons may become partners in buying and selling land. There

is nothing in the nature or essence of a partnership which requires that it should be confined to ordinary trade and commerce, or to dealings in personal property. (Story on Part., §§ 82, 83; Collyer on Part., §§ 3, 51, and note; *Dudley* v. *Littlefield*, 21 Maine, 418; *Sage* v. *Sherman*, 2 N. Y., 417; *Mead* v. *Shepard*, 54 Barb., 474; *Pendleton* v. *Wambersiu*, 4 Cranch, 73; *Thompson* v. *Bowman*, 6 Wal., 316; *Hoxie* v. *Carr*, 1 Sumner, 173.) KENT says, "a partnership is a contract of two or more persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, and to divide the profit and share the loss in certain proportions; and that it is not essential to a legal partnership that it be confined to commercial business. It may exist between attorneys, conveyancers, mechanics, owners of a line of stage-coaches, artisans or farmers, as well as between merchants and bankers" (3 Kent's Com., 24, 28); and why may it not exist between dealers and speculators in real estate?

But, as it is claimed that the partnership in this case existed by parol before the execution of the written agreement, dated November 28, 1864, it is necessary to inquire whether a partnership, in reference to lands, can be formed and proved by parol. Upon this question there is considerable conflict in the authorities. On the one hand it is claimed that a parol agreement for such a partnership would be within the statute of frauds which provides that no estate or interest in lands shall be created, assigned or declared, unless by act or operation of law, or by a deed or conveyance in writing subscribed by the party creating, granting, assigning or declaring the same; and to this effect is the case of *Smith* v. *Burnham* (3 Sumner, 345). On the other hand it is claimed that such an agreement is not affected by the statute of frauds, for the reason that the real estate is treated and administered in equity as personal property for all the purposes of the partnership. A court of equity having full jurisdiction of all cases between partners touching the parnership property, it is claimed that it will inquire into, take an account of, and administer upon all

the partnership property, whether it be real or personal, and in such cases will not allow one partner to commit a fraud or a breach of trust upon his copartner by taking advantage of the statute of frauds; and to this effect are the following authorities: *Dale* v. *Hamilton* (5 Hare, 369); *Essex* v. *Essex* (20 Beaven, 449); *Bunnell* v. *Taintor* (4 Conn., 568). A full discussion of the question is found in *Dale* v. *Hamilton ;* and the reasoning and review of the cases there by Vice-Chancellor WAGRAM are quite satisfactory. The general doctrine is there laid down that " a partnership agreement between A. and B. that they shall be jointly interested in a speculation for buying, improving for sale and selling lands may be proved without being evidenced by any writing, signed by or by the authority of the party to be charged therewith within the statute of frauds; and such an agreement being proved, A. or B. may establish his interest in land, the subject of the partnership, without such interest being evidenced by any such writing." I am inclined to think this doctrine to be founded upon the best reason and the most authority. But whether it is or not, it is not very important to decide in this case. Most of the conflict in the authorities has arisen in controversies about the title to the real estate after the dissolution of the partnership or the death of one of the partners. But suppose two persons, by parol agreement, enter into a partnership to speculate in lands, how do they come in conflict with the statute of frauds? No estate or interest in land has been granted, assigned or declared. When the agreement is made no lands are owned by the firm, and neither party attempts to convey or assign any to the other. The contract is a valid one, and in pursuance of this agreement they go on and buy, improve and sell lands. While they are doing this, do they not act as partners and bear a partnership relation to each other? Within the meaning of the statute in such case neither conveys or assigns any land to the other, and hence there is no conflict with the statute. The statute is not so broad as to prevent proof by parol of an interest in lands; it is simply aimed at the crea-

tion or conveyance of an estate in lands without a writing. If there was a parol agreement in this case before the written one, it was just like the one embodied in the writing, to wit, a partnership to purchase, lease and take refusals of land and then sell, lease or work them for the joint benefit of the parties. This is not a controversy about the title to any of the lands taken or owned by the partners, but it simply relates to the conduct of the defendants while they were acting as partners; and in such a case the statute of frauds certainly can present no obstacle to relief.

We then come to the question whether there was sufficient proof of the existence of this partnership by parol before the 28th of November, 1864, and I cannot doubt that there was. Jones distinctly testified that the partnership between all the defendants did exist as early as September, and that it was afterward put into writing. Neither Reed nor Dickerson, in their testimony, denied this, and neither of them claimed that they did not become partners until the writing was executed. There is abundant evidence that Reed was associated with Jones as early as the latter part of September, or the fore part of October. It does not appear how or by what negotiation the members of the firm were brought together in partnership, and it does not appear through what agency Dickerson was induced to join with the others. As to him, all we have is the evidence of Jones, above referred to, and the writing, and the fact that he, subsequently, without objection, in the division of the money received from the plaintiffs, allowed his share of the sums paid for the services of Higgs, who was employed to pour oil upon the lands, from some time about the first of September. Hence, we must take it as proved, in this case, that this partnership existed as early as September, 1864. But it is claimed, on the part of the appellants, that all the rules of commercial partnerships do not apply to a partnership in real estate. They apply to every other kind of partnerships, and why not to this? This kind of partnership is formed like every other, for the mutual profit and advantage of the

parties, and there is no reason why it should not be governed by the same rules.

In all partnerships one partner is the general agent of all the partners for the transaction of all the partnership business, and I can perceive no reason for not applying the same rule of agency to partnerships in real estate. In fact, all the powers, duties and rights which usually appertain to partnerships, must appertain to partnerships in real estate, except as they are modified by the character of the property; and the only difference grows out of the rules of law in reference to the conveyance and transmission of real estate. One partner cannot convey the whole title to real estate unless the whole title is vested in him. (*Van Brunt* v. *Applegate*, 44 N. Y., 544.) But he can enter into an executory contract to convey, which a court of equity will enforce. While a contract for the conveyance of land must be in writing, yet an agent to execute the contract may be appointed by parol. (Willard on Real Estate, 376.) And hence, when the partnership business is to deal in real estate, one partner has ample power, as general agent of the firm, to enter into an executory contract for the sale of real estate. I find no authority holding that the rules of ordinary commercial partnership do not apply to partnerships in real estate, except the case of *Pitts* v. *Waugh* (4 Mass., 424). It was there held that the law merchant respecting dormant partners did not extend to speculators in land. The learned judge writing the opinion did not cite any authority for the decision he made, and his reasons for the conclusions which he reached are not satisfactory.

Dormant partners are held liable for the debts and contracts of the firm, because they are, in fact, members of the firm, and share in its profits, and the law will not allow them secretly to share in the profits of the firm without taking their share of the risks and bearing their share of the losses, as to third persons. And there is precisely the same reasons for holding a dormant partner in a real estate partnership liable to all persons dealing with the firm. In *Patterson* v.

*Brewster* (4 Ed. Ch. R., 322), the vice-chancellor expressed the opinion that the law merchant does not apply to partners' in buying and selling land. This case and *Pitts* v. *Waugh*, are commented on by Judge MITCHELL in *Bemus* v. *Harrison* (19 Barb., 53), and are there shown not to be precise authority for the doctrines announced. It follows, therefore, that the court committed no error in holding that all the partners were liable for the frauds committed by either in the transaction and prosecution of the partnership enterprise, for it is well settled that the firm is bound for the fraud committed by one partner in the course of the transactions and business of the partnership, even when the other partners have not the slightest connection with, or knowledge of, or participation in the fraud. (Story on Part., § 108; Collyer on Part., § 445; *Griswold* v. *Haven*, 25 N. Y., 595.)

The conclusion I have thus far reached disposes of most of the important exceptions discussed upon the argument before us. It remains only to examine a few exceptions taken to the rulings of the judge at the trial as to evidence.

The plaintiffs, against the objection of the defendants, were permitted to prove that Jones and Higgs put oil upon these lands, both before the partnership was formed and after the lands were transferred to the plaintiffs. In this there was no error. The evidence all tended to reflect light upon the fraud complained of, and was competent for that purpose. The evidence of what Jones and Reed did before the partnership was formed and after the transfer, was at least competent against them. It was also competent to show that oil was placed upon the land at any time. Upon the question, whether these were oil-producing lands as represented, the court instructed the jury that the plaintiffs could not recover for any representations made or acts of fraud committed before the partnership was formed or after the sale was made. The evidence, as limited by this instruction, was properly left for the consideration of the jury. Higgs testified that in January, 1865, Jones met him at the house of a Mr. Thorn

and arranged with him that he should say "no" to everything he should ask him in the presence of Thorn; and that Jones on that occasion put two ten-dollar notes into his pocket, which he afterward showed to Thorn. Thorn was afterward called and testified that Jones and Higgs met at his house on the occasion spoken of, and that, after an interview between them, Jones first calling the attention of Thorn to what he was about to say, asked Higgs if he had been making known to the public that he had been throwing oil upon the lands, and that Higgs denied that he had; that Jones and Higgs then went out of his house, and in two or three minutes Higgs returned and took out of his pocket two ten-dollar bills and showed them to him. The last evidence, the showing of the bills, was objected to by the defendants. I can see no objection to the evidence. It was competent against Jones. It showed that he was trying to make evidence to cover up his fraud; and it was also competent as going to show payment by Jones for the services of Higgs in and about the fraud complained of, or for lying about it. It was not a declaration of Higgs. But right after the interview he showed the money, which he testified was given to him by Jones. It thus had a tendency to confirm his evidence, which was competent against Jones; and it was so near the time of the payment of the money to him by Jones and the interview between him and Jones, that it may fairly be treated as a circumstance connected with and part of the transaction.

On the trial Higgs testified that some of the oil which was placed upon the lands was brought to his house in tin cans; and Jones, in his evidence, denied all knowledge of and connection with these cans. On his cross-examination Jones was asked the following question: "Didn't you, on the 19th day of November, 1866, before Squire Phillips, of the town of Fishkill, testify that there was stolen from the barn of John W. Jones, at Fishkill Landing, in said town, one five-gallon tin can and one one-gallon tin can?" He answered, he did. He was then asked: "Did you testify or swear to these facts in an affidavit?"

Defendants' counsel then objected to the inquiry as to what the witness swore to in an affidavit, and insisted that plaintiffs' counsel should produce the affidavit itself and show it to the witness. Plaintiffs' counsel thereupon produced the affidavit and showed it to the witness, who stated: "This is the affidavit I made," and offered and was about to read the same in evidence. Defendants' counsel then objected to the affidavit as irrelevant and immaterial, and the court said: "Put your question." Defendants' counsel said, "we except." The question was then put and the witness answered, "I did." The exception thus taken is now relied on. It is not well founded. The ground of the defendants' objection was that the affidavit should be produced and shown to the witness before he should answer the question. This was done; and after defendants' counsel objected to the reading of the affidavit the court allowed the witness to answer that he did state the facts in the affidavit. All seems to have been done that was required by defendants' counsel, and they should not now be permitted to claim that the affidavit should have been put in evidence. When he objected to the evidence the counsel did not claim that the affidavit should be put in evidence to show the facts contained in it, but his claim was that it should be produced and shown to the witness; and then he objected to the reading of the affidavit. The court had no reason to suppose that the exception finally taken was upon the ground that the witness was permitted to state what the affidavit contained, and that the affidavit itself was not read. This exception should not, therefore, be permitted to prevail.

I have thus examined all the allegations of error which I deem of sufficient importance to require consideration, and I reach the conclusion that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.