Mr. J ustice Merrick
delivered the opinion of the court:
The case of Kilbourn and Olmstead against Latta comes to this court in the first instance from the court of equity on a bill filed by Kilbourn and Olmstead against their late co-partner, Latta, for the purpose of obtaining an account of the proceeds of certain negotiations conducted within the limits of the partnership as they allege, which have been appropriated by Latta to his own exclusive use upon the theory that they were not subject to the partnership obligations or the terms of the partnership.
The bill in its third paragraph defines specifically the terms of the partnership, under which the suit is brought, in the following words:
“ That the interest of the said co-partnership (a co-partnership of brokers for the purpose of dealing in real estate) in the capital, business and profits of the said co-partnership firm of Kilbourn & Latta was as follows, to wit: the said Hallett Kilbourn, three-eighths; the said James M. Latta *307 three-eighths, ancl the said John F. Olmstead, two-eighths thereof; and the losses, if any, were to be borne by the said Kilbourn, Latta & Olmstead in the same proportion; and it was further stipulated by said partnership agreement, by and between the plaintiffs and defendant, that all profits resulting from operations in real estate, by said firm of Kilbourn & Latta, or by any member thereof, during the existence of said partnership, should belong to said firm, and be entered upon the books of the firm, and paid into the partnership account; and it was further stipulated in said agreement that any information obtained by any member of said firm during the existence of said co-partnership, touching real estate, with reference to its sale or purchase or the consent of the owner of said real estate to sell the same, or the desire of any person to purchase real estate in said District, was to be communicated to said firm of Kilbourn & Latta, for the consideration of the several members, and the action of the firm thereon; and it was expressly agreed in said co-partnership agreement that no member of said firm should, during the existence of said co-partnership, engage in the business of buying and selling real estate in said District on his own account, or with any other person or persons, except in cases where the proposed transaction had been explained to the firm, and said firm had declined to take any part therein.”
Under that agreement they continued to operate, and during the progress of it and in violation of its explicit terms, Mr. Latta entered into a sub and secret partnership with a man by the name of Stearns for the purpose of buying and selling real estate, the profits of said purchases and sales to be equally divided between Stearns and Latta.
Their operations were conducted very largely and the whole of them were secreted from the firm, although the firm was made the nominal agent for the purpose of conducting the purchases and sales; and upon the books of the firm the ordinary brokei’age commissions of brokers for making purchases and sales were entered and credited to the firm, while the profits which were made by Latta under *308 this sub-agreement with Stearns were not entered there, and the knowledge of them was entirely suppressed from the firm.
These operations resulted in very large profits to these two parties, and it is alleged, on the part of the complainant, that those profits amounted to the sum of forty odd thousand dollars. The defendant admits that they were large profits, but the quantum he does not set forth specifically. That is a question, as to the quantum, for after consideration. There was a very large and very superfluous amount of detail testimony taken in the cause. The real testimony in the case might well have been embraced in ten pages of foolscap; but it was spread over 200 or 300 pages, and the time of this court was occupied three or four days in listening to the details of interrogatory and answer upon very immaterial matters.
But the main facts are entirely plain, entirely specific, and distinctly made by the testimony of Olmstead, one of the complainants, in answer to the interrogatories propounded to him on the part of the defendant, in which be states explicitly that the terms of the partnership were the identical terms contained in tbe third paragraph of the bill which I have already read in the hearing of the bar. His testimony is sustained by a great deal of written testimony, by schedules of the operations of the partnership, showing upon the face of all these collateral papers that sucb, in point of fact, were the terms of tbe partnership. Independent, therefore, of other testimony, these portions of testimony which I have enumerated are sufficient, in tbe eye of a court of chancery, to outweigh tbe denial of tbe defendant in his answer and to establish the facts relied upon by the complainants in- their bill.
Assuming that the facts are established by that sort of testimony, were it admissible, the defendant contends, and that is the chief point of his contention before the court, that no partnership involving any transactions in real estate which would result substantially in an interest or the *309 fruits of an interest in real estate can be established by parol; but that within the fourth section of the Statute of Frauds it is necessary that such a partnership should be established by writing, and that otherwise there is no redress for a violation of faith in respect of such transactions.
There is, it is true, a very great conflict of authorities upon the subject. But the court is satisfied that the vast weight of opinion, running parallel with the instincts and requirements of natural justice, is on the side of the maintenance of such partnership by parol proof.
The leading case upon the subject is the case of Dale vs. Hamilton, 5 Hare,'369, and while that, so far as England is concerned, is to some extent shaken by the case of Caddick vs. Skidmore, 2 DeG. & J., 51, yet it is recognized in the writers on partnership in England as establishing the doctrine, of whom chiefly may be mentioned Bindley in his latest work, on page 89, and the two or three following pages. That case reviews the doctrine and authorities very largely. It very copiously criticises them, and in aid of that review of the authorities, upon the strongest reasoning upon the policy and objects of the Statute of Frauds, maintains distinctly that such a partnership need not be avouched by writing within the fourth section of the statute. That authority is thoroughly sanctioned in this country by numerous decisions, among the chief of which may he noted the case of Chester vs. Dickerson, 54 N. Y., 1, and the case in 63 Iowa, at page 64.
It is true there are authorities, as I have said, the other way, but the weight of authority and the reason of the law follows the case as first decided by Vice Chancellor Wigram in 5 Hare, where it is held that such a partnership need not be established in writing, but is good independently of it. And that doctrine this court accepts fully, and it would be very slow at any time to accept a technical doctrine for the defeat of the purposes of justice and right between man and man.
Such being, therefore, the doctrine, and the partnership being established, it was clearly proved (not controverted *310 indeed) that dealings had occurred in this way and that profits had been made; the contention was made on the part of the defendant that if that were so, a court of chancery was not the proper court to obtain redress for the violation of the agreement, but that the only redress which the party could have was in his action for damages, if any such lay at all, in a court of law for the' injury the plaintiff sustained by reason of the violation of the partnership undertaking by the defendant, Latta, and his redress therefore was an action founded in damages; and being a parol contract it would be damages in an action of assumpsit and not in an action of covenant, as it would have been in the case of a contract under seal.
But we do not read the law that way. The principles which regulate the action of a court of chancery with regard to the abuse of the confidence of partnership, the taking advantage of partnership transactions and making a profit independently and privately out of that which belonged to the partnership and in good faith should go to it, are so distinctly laid down in two or three sections of Story on Partnership that they will be a full vindication of the holding of the court in this particular case. I i’ead first from section 173, where he says:
“ One of the most faithful duties and obligations of all the partners is strictly to conform themselves to all the stipulations contained in the partnership articles, and also to keep within the bounds and limitation of the rights, powers, authorities and acts belonging and appropriate to the discharge of the partnership, trade or business. Every known deviation from and every excess in the exercise of such rights, powers, authorities and acts which produce any loss or injury to the partnership to that extent are to be borne by the partner who occasions a loss or injury; he is bound to indemnify the other partners therefor.”
Again in section 174 he says:
“ But there are many implied duties and obligations, even though they are not expressed (as here they are all expressed) of an equal importance though, not perhaps always *311 of so obvious a nature. Thus, for example, it is a violation of good faith-for any partner, in conducing a partnership business, to stipulate clandestinely with third persons for any profit or benefit to himself exclusively of the partnership, for all the partnership property and partnership contracts should be managed for the equal benefit of all partners according to their respective interests and shares therein. If, therefore, any one partner should so stipulate clandestinely for any profit, advantage or benefit to himself to the disadvantage or in fraud of his partnership, he will in equity be compelled to divide such gains with them.”
Now, upon that I might pause here for the purpose of showing that even if it were made to appear upon authority that a contract to buy and sell real estate for partnership profits, and to divide the profits among the partners in any proportions, were subject to the objections arising out of the fourth section of the Statute of Frauds, yet, nevertheless, it is very clear that there may be a partnership among brokers for the purpose of dealing in landed estate ; that is, as acting agents for other parties to buy and sell on account of other parties. Now, suppose that is the sole limitation of the partnership here. The facts show that Latta, within the terms and principles of this section of Story which I have quoted, did violate his partnership obligations by going outside of it and receiving secretly from the man with whom he was dealing, over and above the ordinary brokerage profits, certain profits to himself out of the transactions, which ought to have been partnership transactions, to wit: half the profits of the speculation of the man for whom he was dealing in the name of the partnership.
Under such circumstances, clearly within the terms and principles of this section, he would be responsible to his co-partners for that share of illicit profit which he had made over and above the proper profit of the partnership which he had taken advantage of them to make in fraud of their rights. That is entirely outside of the objection of the Statute of Frauds with regard to that phase of the partnership relations which contemplated a purchase and sale by *312 them of real estate in order to their own advantage. So, also, in section 175 of the same work, it says:
“ The same doctrine is applied to other analogous cases. In all purchases and sales made on account of the partnership, every partner is bound to act expressly for the benefit of the partnership. Therefore he has no right and cannot, consistently with his duties, voluntarily place himself in a situation in which his bias, as well as his interest, is in opposition to the interest of the partnership.”
Also, in section 177, it is said:
“ Upon similar grounds it is the implied obligation and duty of every partner not to-engage in any other business (this applies to the phase of it of which I am now speaking) or speculation which must necessarily deprive the partnership of a portion of the skill, industry, diligence or capital which he is bound to employ therein. In other words, he is not at liberty to deal on his own private account in any matter of business which is obviously at variance with or adverse to the business or interests of the partnership.”
Section 178. “And if, therefore, one partner should clandestinely carry on any other trade or the same trade for his own profit and advantage and in a manner injurious to the true interests of the partnership, or should divert the capital or funds of the partnership» to such secret and sinister purposes, he will be compelled in equity to account for all the profits made thereby.”
'As I have said, the proof is clear, in either aspect of the case, whether the partnership be proved only to be a partnership of brokerage, or whether it be a partnership extending to the right to deal in real estate and to buy and sell it for their own profit, in either aspect, that this defendant, within the principles laid down here, has violated the partnership» obligation, taken advantage of his own skill, diligence, time and knowledge, which it was his bounden duty to dedicate exclusively to the benefit of his partnership, and has reaped this secret advantage from these dealings. The knowledge and skill of the partnership, the state of the real estate market, was their capital in trade, and he was *313 bound to share all the beneficial results which would flow from his knowledge with his co-partners. He has not done it. He has been guilty of one of those frauds which the terms of the commercial law characterize with the uttermost reprobation, and a court of justice (and this court sitting in chancery whenever such a case shall come before it will not be behind any other court) will administer the full measure of redress.
Therefore the decree will be that the parties account; that the case be remanded to the circuit court in order that it may be referred to the auditor to take an account of the profits which he may have made according to the allegations and proofs of this bill, and as to which he is responsible to his co-partners for their just proportionate shares, according to the terms set out in the third paragraph of the bill.