HENRY F. WALKER, Appellant, *v.* THE ANGLO-AMERICAN MORTGAGE AND TRUST COMPANY, ALBERT C. BURNHAM, LYSANDER W. TULLEYS and JAMES N. BROWN, Respondents.

*Organization of a corporation — liability of each partner for the misrepresentation and concealment of his copartners.*

Where the members of a firm, under their firm name, organize a corporation, each partner is liable for the misrepresentations and concealments of the others, committed while engaged in promoting the enterprise.

Persons who undertake to form a corporation and induce others to subscribe to stock therein, by issuing statements and prospectuses, occupy a position of trust and confidence toward the persons so induced to subscribe for shares to be issued, and they are bound to exercise the utmost good faith in their transactions. If they make material misrepresentations, or conceal material facts in respect to the enterprise, to the injury of those who are induced to subscribe, they become liable for damages, and their liability is not limited to subscribers whom they personally induced to take shares, but it extends to all those who are induced by their agents to subscribe for shares. If they make material misrepresentations to or conceal material facts from their agents, who, relying on their statements, induce persons to become subscribers, the promoters are liable for the damages.

A purchaser of shares in an existing corporation from a stockholder has no interest in the application of the money which he pays therefor, but it is different with one who agrees to subscribe for shares in a corporation to be created.

In an action brought to rescind a purchase of fifty shares of stock, issued by the defendant corporation, and to recover the amount paid therefor, the court found that the firm by which the corporation was organized wrote certain letters and issued certain circulars in regard to the same, and that the statements and the correspondence were designed to mislead the agents of such firm and corporation, but refused to find that they were designed to mislead subscribers. *Held,* that such refusal was improper; that if the statements were put forth with the design to mislead and deceive the agents of the defendants appointed to procure subscriptions, it followed that they were put forth with the intention of deceiving those who might subscribe for shares, and the inference of fraud, from the facts proved, was as strong in the one case as it was in the other.

APPEAL by the plaintiff, Henry F. Walker, from a judgment of the Supreme Court in favor of the defendants, entered upon a decision of the court in the office of the clerk of the city and county of New York on the 20th day of January, 1892, dismissing the plaintiff's complaint, and for costs.

The action was brought to rescind a purchase of fifty shares of stock issued by the defendant corporation, and to recover from the defendants the amount paid therefor.

The firm of Burnham, Tulleys & Co. was organized in 1875, and from October, 1884, until its dissolution, June 1, 1888, it was composed of the individual defendants in this action. The firm was engaged in securing and selling western farm mortgages, having its principal place of business at Council Bluffs, Iowa. Burnham loaned to the firm $100,000, the capital employed in this business, upon which he received seven per cent interest. Tulleys and Brown contributed their time, services and experience. This firm had done a large business in procuring and selling, in the eastern States and abroad, western farm mortgages, amounting in the aggregate to several million dollars.

Alfred Walker & Co. was a firm of bankers and brokers engaged in business in New Haven, Conn.

The plaintiff is a physician residing in the city of New York, and is a cousin of Alfred Walker, senior member of the firm. From time to time he had made investments through the agency of this firm, and, among other securities, had purchased a western farm mortgage obtained by the New Haven firm from Burnham, Tulleys & Co. In 1888, the firm resolved to form a corporation under the laws of the State of Iowa for the purpose of transacting the business theretofore carried on by the partnership.

By a contract executed February 24, 1888, between the individual members of Burnham, Tulleys & Co., it was agreed that Burnham should receive all of his interest in the firm, $100,000, secured to be paid in a manner specified and should turn over all of his interest in the business to the corporation to be formed. It was agreed that the corporation should issue $100,000 of stock for the good will of the business of the firm, of which Burnham, Tulleys and Brown were to receive $30,000 each, and $10,000 was to be issued to J. V. McDowell, who had an interest in a branch firm connected with Burnham, Tulleys & Co.

January 1, 1888, Burnham, Tulleys & Co. wrote Alfred Walker as follows :

                    "BURNHAM, TULLEYS & Co.,
                         "INVESTMENT BANKERS,
                    "COUNCIL BLUFFS, IOWA, 1–1–1888.

"ALFRED WALKER, Esq., New Haven, Conn.:

"DEAR SIR — Referring to the incorporation scheme, which has been written about several times, we would say that we have about

completed arrangements between ourselves to cover the same. We find an unwillingness on our part to part with the valuable plant which we have upon our books, the outstanding loans figuring up in the millions.

"Of a proposed capital of $500,000 we will take the larger part ourselves, and, therefore, have only a limited amount to dispose of. As we indicated to you that you might place $50,000, we will adhere to that, although it takes a large portion of what we have to sell. You are, therefore, authorized to take subscriptions up to $50,000, 50% of which to be paid at the time the subscription is made. Herein we hand you form of subscription. When the subscriptions are made, kindly forward to us the checks, give a receipt therefor, and certificates of stock will follow between now and the first of June. The board of directors will call in the balance of 50% between now and that time. Having only a limited amount to sell we ask your early advice on the subject, as we will be obliged to treat the subscriptions in the priority of their receipt.

"We believe we have one of the most valuable plants which has been offered, as it embraces an experience of over 25 years, and we have a large amount of business on our books. With the increased facilities which the incorporated form will give us, we think the stock will be valuable, and expect it will be worth a handsome premium in regular course.

                    "Yours, truly,
                         "BURNHAM, TULLEYS & CO."

March third, Burnham, Tulleys & Co. wrote Alfred Walker & Co. as follows:

                "BURNHAM, TULLEYS & Co.,      ⎫
                     "INVESTMENT BANKERS,         ⎬
                "COUNCIL BLUFFS, IOWA, 3–3–1888. ⎭

"Messrs. ALFRED WALKER & Co., New Haven, Conn.:

"GENTLEMEN — We have your favor of the 29th inst. Under cover of our late respects you will see that we have practically decided the question of incorporation, and authorize you to take subscriptions for stock to the amount of $50,000.00. As we get no commission ourselves, and believe the stock to be very valuable, we would hardly feel inclined to pay any commission, and offer none to anybody.

" The stock will be worth in our judgment, as soon as the organization is completed, a premium. Our charter is liberal, and allows us to issue debentures and guarantee loans, and we can give such commissions as we may decide upon. * * *

" Referring to the commission on sale of stock would say, that were our company a new one with no valuable plant, it would be consistent to give commissions, but, as we have written you, we are loath to give up our birthright and would take the entire amount of stock if we thought it practicable.

" Yours truly,

" BURNHAM, TULLEYS & CO."

March 10, 1888, Burnham, Tulleys & Co. wrote Alfred Walker & Co. the following letter :

" BURNHAM, TULLEYS & Co.,

" INVESTMENT BANKERS,

" COUNCIL BLUFFS, IOWA, 3–10–1888.

" Messrs. ALFRED WALKER & Co., New Haven, Conn. :

" GENTLEMEN — We have your valued favor of the 7th inst., and believe our respects of yesterday will cover the additional information you desire. We hardly think some of your friends appreciate altogether the advantage of securing stock in a company which secures the accretions and emoluments of a business of long standing, and of such value as Burnham, Tulleys & Co. have upon their books. We have been, as before intimated, rather unwilling to incorporate. In order to cover the competition that is upon the market, we have decided upon this step at your suggestion and some of our other friends, but would not be willing to take it unless we ourselves were largely interested in the stock.

" We believe that under our new incorporation that securities will be more favorably cared for, and that we will find it mutually profitable in your representing us in New Haven, as we will endeavor to cover all the wants of your customers. * * *

" Yours truly,

" BURNHAM, TULLEYS & CO."

March 20, 1888, Burnham, Tulleys & Co. wrote Alfred Walker & Co. as follows :

HUN — VOL. LXXII.     43

" Burnham, Tulleys & Co.,
" Investment Bankers,
" Council Bluffs, Iowa, 3–20–1888.

Messrs. Alfred Walker & Co., New Haven, Conn. :

" Gentlemen — We are in receipt of your valued favor of the 17th inst., covering draft for $2,500, 50% of subscription of 50 shares in the American Mortgage and Trust Co., account of your Mr. Walker. Money has been coming in quite freely, and we would hardly think it wise at this time to accept any more money on account of this subscription. It is possible we will incorporate sooner than we anticipated, and if so we will call in the other 50 per cent. We are pleased that you approve of the papers sent you, and believe from the present plans that the company will be one of the very best extant

" Lately we took off a statement of our business, and were astonished to find how well it appeared, and think that we can affirm, without boasting, that no plant has been offered to the public possessing such desirable elements for an incorporation as we have. We are not incorporating in order to get rid of objectionable features of our business, but only because we think it will put the trusts we have assumed in a more permanent form and give us a larger line of customers. We repeat, that we expect to be liberal takers of the stock, and would not dispose of any of it outside, if we did not think the last-named object would be attained.

" We are gratified to have you connected with us, and believe with· united effort and the experience which we all have had, that in regular course the stock will command a handsome premium.

" As yet we have not considered just the plan of guaranty it will be most judicious to adopt, but it seems to us that a certain class of loans at $6\frac{1}{2}$% we might guaranty, but we did not contemplate guaranteeing above 6%. We have adopted, within a reasonable length of time, the most rigid rules in the making of loans, and believe in the new plant that we will have as fine a line of investments as have ever been floated.

" We trust that the valued customers to whom you refer will not hesitate to take advantage of this investment while there is opportunity, as it does not occur very often. If it suits your purpose better, we would prefer that a smaller amount be paid at the time

of the subscription, say 15 or 20%, as we do not care to put the company to the payment of interest when money is so easy as it is with us at present. We shall aim most certainly to merit the high regard you have for us.

"Thanking you for your kind expressions, we are

"Yours truly,

"BURNHAM, TULLEYS & CO."

The subscription referred to in the foregoing letter was of Alfred Walker, a member of the firm, and is not the subscription of the plaintiff. April 2, 1888, Burnham, Tulleys & Co. issued and circulated a printed statement, of which the following is a copy:

"A. C. BURNHAM.      L. W. TULLEYS.      J. N. BROWN:

"OFFICE OF BURNHAM, TULLEYS & Co.,

"COUNCIL BLUFFS, IOWA, *Apl.* 2, '88.

"Realizing the advantage of permanency and perpetuity in a business conducted under corporate form, the American Mortgage & Trust Company has been organized under the Laws of the State of Iowa, to succeed the old and well-known firm of Burnham, Tulleys & Co., which has been placing Western Farm Mortgage Loans for more than twenty-five years, and has now many millions upon its books. The proposed capital is $500,000, a large part of which has been taken by ourselves. If it were practicable we should take it all, as, from our past experience in the business, we feel sure it will prove a profitable investment. We offer a limited amount of stock to our friends at par. Under our Articles of Incorporation and the Laws of this State the stock is full paid and non-assessable. The company will be under the management of the members of said firm and will adhere to the same conservative methods which have characterized their past record. It needs no argument to demonstrate the value of our plant or that the stock will pay handsome dividends. The new firm will increase our facilities both East and West for a more extended business, and with a larger business will come increased profits. As the amount we have to dispose of is limited we offer it to all our friends and customers, and subscriptions will be accepted in order of the priority of their receipt. Subscriptions should be accompanied by 25 per cent of the amount subscribed. The balance will be called in between now and June

first, as the directors may elect. As soon as the amount to be sold is taken we reserve the right to reject subscriptions in excess.

"Yours faithfully,

BURNHAM, TULLEYS & CO."

This circular was distributed to the correspondents of the firm, and, among others, copies were sent to Alfred Walker & Co., who received subscriptions from various persons for shares of the par value of about $50,000 and transmitted the money to Burnham, Tulleys & Co. About April 7, 1888, the plaintiff subscribed through Alfred Walker & Co. for fifty shares of the stock for which he paid $5,000, which was remitted to the defendants. Subsequently, the corporation was placed in the hands of a receiver, and, through some scheme of the reorganization not disclosed by the evidence, the stock of the consenting shareholders was reduced one-half and the shares issued for good will were surrendered to the corporation. On the trial of the action, the plaintiff offered to surrender his shares.

*August C. Brown,* for the appellant.

*Paul Wilcox,* for the respondents.

FOLLETT, J. :

The individual defendants, under their firm name, organized the Anglo-American Mortgage and Trust Company, and each partner is liable for the misrepresentations and concealments of the others, committed while engaged in promoting the enterprise. (*Chester* v. *Dickerson,* 54 N. Y. 1; *Getty* v. *Devlin,* Id. 403; *Locke* v. *Stearns,* 1 Met. 560; *Rapp* v. *Latham,* 2 B. & A. 795; 1 Lind. Part. [3d Eng. ed.] 54, 310, 329; Story Part. §§ 108, 131; Big. Law Fraud, 240, § 6.) Burnham is equally liable with his partners for their misrepresentations and concealments.

The individual defendants, under their firm name, organized the corporation, fixed the amount of the capital stock and determined the time when and the terms upon which the corporation should be formed. They appointed agents to receive subscriptions for shares, fixed their price and the compensation to be paid the agents. All this was done before the corporation was created ; and more, they as a

firm, received the money of the plaintiff and of others for shares in advance of the formation of the company. How the defendants applied this money does not appear. The defendants were the promoters of this corporation, and persons who undertake to form a corporation and induce others to subscribe for stock therein by issuing statements and prospectuses occupy a position of trust and confidence towards the persons so induced to subscribe for shares to be issued, and they are bound to exercise the utmost good faith in their transactions. If they make material misrepresentations or conceal material facts in respect to the enterprise, to the injury of those who are induced to subscribe, they become liable for damages. (*Brewster* v. *Hatch*, 122 N. Y. 349; *Getty* v. *Devlin*, 54 id. 403; *Erlanger* v. *The New Sombrero Phosphate Co.*, L. R. [3 App. Cas.] 1218; 1 Mor. Corp. [2d ed.] § 291.)

The liability of promoters is not limited to subscribers whom they personally induce to take shares, but it extends to all those who are induced by their agents to subscribe for shares, and if they make material misrepresentations to, or conceal material facts from, their agents, who, relying on the statements, induce persons to become subscribers, the promoters are liable for the damages. It is a familiar principle that what one does by his agent, he does by himself. The scheme which was organized by the defendants and carried out in part through their agents was the proximate cause of the plaintiff's damages, and no intervening and responsible principal standing between the plaintiff and defendants, the latter are liable to the former to the same extent as if they had personally, by false representations and concealments, induced him to become a subscriber. (*Getty* v. *Devlin, supra.*)

A purchaser of shares in an existing corporation from a stockholder has no interest in the application of the money which he pays for the shares, but it is quite different with one who agrees to subscribe for shares in a corporation to be created. The difference is well stated by Chief Justice COLERIDGE in *Twycross* v. *Grant* (2 C. P. Div. 483). He said: "The value of a share in a company, however, depends not only on those circumstances which regulate the value of all salable commodities, but also on the persons by whom and the mode in which the capital of the company is to be dealt with. It is utterly immaterial to an ordinary purchaser to know

what the vendor will do with the purchase money when he gets it; the purchaser has no further interest in it. But an applicant for shares in a company is in a totally different position. His money becomes part of the capital of the company, and to him it is all important to know what sort of persons are to have the control of his money when he has paid it, and how that money is to be applied, whether upon the enterprise itself or in remunerating, perhaps with lavish extravagance, those who have brought the company into existence. Again, it is all important for him to know whether shares applied for by other people are applied for honestly, as by himself, or by persons whose only object is to create a factitious demand for the shares, and to get rid of them as soon as they have succeeded in deluding others to take them on the faith of their apparent value. Now, these are all matters which promoters may arrange for their own benefit, and keep entirely out of sight; and it is notorious that by taking advantage of their opportunities in this respect promoters have committed gigantic frauds."

This brings us to the question whether the defendant did make material false statements to, and conceal material facts from, their agents, with the intent of inducing, and which actually did induce, such agents to recommend and advise the plaintiff to subscribe for shares.

The court found that Burnham, Tulleys & Co. wrote the letters and issued the circular which are set out in the statements of facts. In the letter of March 20, 1888, they wrote : "We repeat that we expect to be liberal takers of this stock, and would not dispose of any of it outside if we did not think the last-named object (a larger line of customers) would be attained." The whole tenor of these letters is to the effect that Burnham, Tulleys & Co. were to take a large proportion of the shares to be issued, and that the corporation was to be managed by the members of the firm in the same manner that their business had been previously managed. There is no hint in the letters or circular that any of the shares were to be issued except for cash, or that any were to be issued to members of the firm for good will.

The court found : " 10. The statement in said circular that the proposed capital is $500,000, 'a large part of which has been taken by ourselves,' was untrue, and designed to mislead and deceive A. Walker & Co.

" 11. The statement that 'the company will be under the management of the members of said firm' was untrue, and designed to mislead and deceive A. Walker & Co.

" 12. On and after the organization of the corporation defendant Albert C. Burnham held no office of any sort in said corporation.

" 15. Burnham, Tulleys & Co. never disclosed to A. Walker & Co. the fact of the execution of the agreement of February 24, 1888, respecting good will stock, nor the fact that $100,000 of good will stock was to be issued to the members of the firm upon its incorporation.

" 16. From the correspondence and dealings of A. Walker & Co. and Burnham, Tulleys & Co., with respect to the incorporation, A. Walker & Co. believed and had reason to believe, that subscribers for stock, whether members of the firm or outsiders, stood on equal footing."

The court also found that Alfred Walker & Co. had not seen the circular of April second when they effected the sale of the stock to the plaintiff and obtained his subscription, and it did not rely upon the statements contained therein in effecting the sale to the plaintiff and in taking his subscription.

But this finding does not relieve the defendants from liability, for, under the letters which they put forth, they were bound to procure the corporation to be organized upon the basis of all subscribers paying par value in cash for the shares to be issued, which they did not do, but issued to themselves one-fifth of the entire capital for so-called good will. In addition to this, the corporation was not placed under the management of the members of the firm, nor did they become liberal takers of the stock, as they represented they would be. Burnham took no shares except the $30,000 issued to him for good will, and never assumed the management of the affairs of the corporation.

The court was asked to find that the statements and the correspondence were designed to mislead, not only A. Walker & Co., but persons intending to become subscribers for the shares.

The court found, as above stated, that the statements and the correspondence were designed to mislead A. Walker & Co., but refused to find that they were designed to mislead subscribers, to which refusal the plaintiff excepted. This, we think, was error. If the

statements were put forth with the design to mislead and deceive A. Walker & Co., the agents of the defendants for procuring subscriptions, it is difficult to see why it does not follow that they were put forth with the intention of deceiving those who might subscribe for shares. The inference of fraud from the facts proved is as strong in the one cause as it is in the other. Upon a re-trial of this case, if one shall be had, it may be disclosed upon what terms other subscriptions were made, to whom the shares were first issued, and what disposition was made by the defendants of the funds received by them.

We think the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and BARRETT, J., concurred.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.