## Mead and others *vs.* Shepard and others.

A referee found, as matter of fact, that the defendants were partners in the business of purchasing land in the counties of Wayne and Seneca, and the cutting and sale of wood thereon, from the 24th of January, 1865, until after the 16th of September, of the same year; and that as such partners they cut, or caused to be cut, wood and logs on two lots, and were engaged in the construction of a saw-mill upon one of the lots. *Held*, that upon these facts the referee was warranted in the conclusion of law that the defendants were liable for supplies furnished to, and labor done for, them in carrying on the said business.

The defendants, H. S., C. S., N. and A., by their agreement in writing, dated January 24, 1865, became jointly interested in an adventure for the purchase of lands in the counties of Seneca and Wayne, and for the cutting and sale of the wood thereon, on their joint account. H. S. was to be the acting agent of the parties, in the purchase of the lands and in carrying on the business of cutting and selling the wood thereon, and C. S. was to be the trustee for his associates, to receive the title to the lands and to hold possession of all papers and vouchers connected with the said purchases, and with the sales of such land, and to keep and deposit all moneys received or realized, for the use and benefit of the said parties. Under this agreement H. S. opened, and for several months kept open, an office for the purchase of land and the cutting and sale of wood and timber. During this period he purchased various parcels of land, for which he took contracts, or deeds, in his own name. Most of the contracts were afterwards assigned to C. S. The money for the purchase of these lands, and for the carrying on of said business, was paid chiefly by C. S., all of the defendants paying more or less thereof, except H. S., who was not to contribute any thing to the original purchase of the lands, but was afterwards to contribute towards the expenses in proportion to his interest. Among other lands purchased by H. C. were two lots called the S. lot and the A. lot. The principal work done by H. C. and by others under his direction, while managing the business, was on those lots; and all the wood cut and timber got out by the men employed by him was on these two lots.

*Held*, that in contracting for the purchase of the S. and A. lots, and in cutting the wood and timber thereon, H. C. was performing the duty assigned to him by his associates, for which he opened and kept open said office; and the wood and timber cut on those lots having been so cut for the common benefit of all the defendants, they were responsible for all his contracts with the men hired to labor thereon, and for supplies furnished him to enable him to prosecute such business.

*Held, also*, that upon the above facts being proved, in an action brought by parties who had performed labor and furnished supplies for the benefit of those jointly interested in the said land, against the latter, to recover the

Mead *v.* Shepard.

amount thereof, a report of a referee in favor of the plaintiffs, against all the defendants, not only could not be set aside as being against the evidence, but was clearly right, and in accordance with the fair and just weight of the evidence.

APPEAL by the defendants from a judgment entered upon the report of a referee.

The action was brought by the plaintiffs as copartners in business under the firm name of Lewis C. Mead & Co., against the defendants and one Henry C. Spaulding as partners in business under the firm name and style of Henry C. Spaulding & Co., to recover for goods sold by them to said Spaulding & Co., and for demands for labor, assigned to them by others.

The defendants Shepard and Nichols answered by general denial; the defendant Archer, not having been served with process, did not appear. The cause was referred to a referee.

On the trial the questions litigated were, 1st. The partnership of the defendants. 2d. The liability of the defendants for the alleged demands, even if partners. 3d. The right of the plaintiffs, as partners, to recover the claims alleged to have been assigned to them.

It was proved that on the 24th of January, 1865, the defendants entered into an agreement to procure the purchase of two thousand acres of wood land, in the counties of Wayne and Seneca. The contracts were to be made therefor by Henry C. Spaulding, and assigned to Charles J. Shepard, as trustee, for the benefit of the parties. It was agreed that if any personal bond was required, Spaulding was to give it. Shepard was to pay $4000; Nichols, $3000; Archer, $1000. Their respective interests were as follows: Spaulding one-half interest; Shepard one-fourth interest; Nichols three-eights of one-half interest; Archer one-eighth of one-half interest. Spaulding was not to pay any part of the first $8000, but was afterwards to contribute towards any expenses, in proportion to their

respective interests. The title to said two thousand acres to be perfected in Shepard, on or before the 1st day of March, 1866. It was also provided as follows: "It is hereby declared to be the duty of the said trustee, Charles J. Shepard, on the completion of the purchase and the vesting the title in him, or as much sooner as the same may, by agreement or otherwise, be lawful and permissible, to proceed to make arrangements for the cutting and sale of the wood on said premises, either personally or through such agency as he may select, and from the proceeds thereof shall pay off any indebtedness incurred in the prosecution of any work."

Under this agreement Spaulding proceeded to purchase lands, and an office was opened at Savannah, Wayne county, on the 2d day of February, 1865. Mason Loomis was their book-keeper; the books were kept by him in the name of Charles J. Shepard, trustee. The business of the company was the purchasing of woodlands, getting out wood, sawing logs and selling timber. Spaulding was the directing man of the company. The book-keeper, Mason Loomis, testified that he understood the parties indebted to be Spaulding, Shepard, Nichols and Archer, and that he received his pay by checks drawn by Spaulding on Shepard. The sources of his information were declarations of Spaulding, letters written by Nichols to Spaulding; letters from Shepard to Spaulding, and books, letters and checks. There was no wood or timber got out on any other lot except the Smith and Armitage lots. The plaintiffs furnished groceries to the men working upon the Armitage and Smith lots, at the request of Spaulding, charging them to Spaulding & Co., by his directions. And sundry claims of laborers, for work done for the defendants, upon the lands in question, were assigned to the plaintiffs, for which the latter claimed to recover.

The referee found the facts as they are stated in the opinion; and he found as a conclusion of law, that the

plaintiffs were entitled to recover of the defendants the sum of $871.17 for the items furnished by them to the defendants, and the further sum of $333.67 for the items of account assigned to them by the persons named, together amounting to $1204.84, and interest; and he ordered judgment in favor of the plaintiffs, against the defendants, for the sum of $1285.66, with costs.

*Sedgwick, Andrews & Kennedy,* for the appellants.

*Hunt & Green,* for the respondents.

*By the Court,* E. DARWIN SMITH, J. The referee finds, as matter of fact, that the defendants were partners in the business of purchasing land in the counties of Wayne and Seneca, and the cutting and sale of wood thereon, from the 24th day of January, 1865, until after the 16th day of September of the same year; and that as such partners they cut, or caused to be cut, wood and logs on a tract of land known as the Armitage lot, and also on a tract of land known as the Smith lot, and were engaged in the construction of a saw-mill on said Smith lot. The whole case depends upon this finding; for there is no question, or room to doubt, that the judgment is right if this finding upon the fact is warranted by the evidence. The legal conclusions drawn by the referee are clearly correct upon the premises assumed by him. We are therefore asked, in reviewing this judgment, to set the same aside on the ground that the report of the referee upon the facts upon which it is founded is without evidence, or against the clear and decided weight of the evidence. Upon the clear and undisputed evidence in the case, aside from some evidence which perhaps was erroneously received against the objections of the defendants' counsel, it seems to me that the report of the referee not only cannot be set aside as against the evidence, but is clearly right and in full accord-

ance with the fair and just weight of the evidence. The defendants, by their agreement in writing of the date of January 24, 1865, became jointly interested in an adventure for the purchase of lands in the counties of Seneca and Wayne, and for the cutting and sale of the wood thereon, on their joint account. The defendant Spaulding was to be the acting agent of the parties in the purchase of the said lands and in carrying on the business of cutting and selling the wood thereon, and the defendant Shepard was to be the party or trustee for his associates to receive the title to the lands purchased and to hold possession of all papers and vouchers connected with the said purchases, and with the sales thereof, and to keep and deposit all money received or realized, for the use and benefit of the said parties. Under and in pursuance of this agreement it clearly appears, and is undisputed and indisputable, that the said defendant Spaulding proceeded from Brooklyn, where these parties then resided, to Savannah in the county of Wayne, where he opened, and kept open, for six months or so, an office for the purchase of land and the cutting and sale of the wood or timber growing thereon. That during this period he purchased a large number of strips or parcels of land, for which he took contracts in his own name, or deeds. That most of these contracts were afterwards assigned to Shepard. That the money for the purchase of these lands and for the carrying on of the said business was paid chiefly by the said Shepard, all of said defendants paying more or less thereof, except the defendant Spaulding, who was not to contribute any thing to the original purchase of said lands, but was afterwards to contribute towards the expenses in proportion to his interest.

Among other lands purchased by said Spaulding after he opened such office, February 2d, 1865, and while he kept up the said business, which ended in September afterwards, were the two lots called the Smith lot and the Armitage lot. The principal work done during this period by the

defendant Spaulding, and under his direction, was on the said Armitage and Smith lots, and all the wood cut and timber got out by the large number of men employed by him was on these two lots. In contracting for the purchase of these two lots, and in cutting the wood and timber thereon, Spaulding was performing the duty assigned to him by his associates, the other defendants, and for which he went to Savannah and opened and kept open said office. The wood and timber cut on these lots was so cut for the common benefit of these defendants. It matters not that the contract for the purchase of these lots was given up, or that the defendants failed or refused to complete the purchase thereof by paying up the purchase price in full. While Spaulding held possession of said lots and was carrying on the defendants' business entrusted to him, they were, and must be, responsible for all his contracts with the men hired to do such work thereon, and for supplies furnished him to enable him to prosecute such business. Such work was done and such supplies furnished for the common use and benefit of all the defendants. I can see no ground in the evidence for the pretense that the said Smith lot and the Armitage lot were not purchased on the joint account and for the common benefit of the defendants. The Smith lot was purchased on the 11th of April, 1865. Of the $2000 of purchase money paid in hand upon it, $1500, it appears, was paid by the defendant Shepard, and $500 by the defendant Nichols, upon his note or check. There is no evidence in the case which tends to discriminate between the purchase of the Smith and Armitage lots and the other lots, or to show that the work done on these was for the private benefit and account of the defendant Spaulding, except his deposition, which is shuffling and evasive and not entitled, I think, to credit in view of his whole conduct, acts and declarations, as disclosed by the clear and undisputed testimony in the case. At least, the referee had a right to

disbelieve him. Some of the questions put to the witness, I think, were objectionable; but rejecting all the evidence called for or received, which might possibly be regarded as inadmissible upon objections properly taken thereto, there is abundance of testimony besides, properly received and clearly admissible, to sustain the referee's report, and I do not think any possible injury has been or could be done by the answers to the questions so objected to. I think the judgment should be affirmed.

Judgment affirmed.

[MONROE GENERAL TERM, September 2, 1867. *J. C. Smith, Welles* and *E. D. Smith,* Justices.]