# SUPREME COURT,

AT THE

AUGUST TERM, 1877.

Present:

Hon. DECIUS S. WADE, CHIEF JUSTICE.
Hon. HIRAM KNOWLES, ⎰ JUSTICES.
Hon. HENRY N. BLAKE, ⎱

## HIRBOUR, appellant, *v.* REEDING, respondent.

VERBAL CONTRACT — *copartnership for locating quartz lode* — *Statute of Frauds.* A., B. and C. entered into a verbal contract of copartnership to prospect for, locate, record, pre-empt, develop and mine quartz lodes in this Territory. Each party was to have the same interest in the property. The Silver Girdle lode was discovered by the parties, but it was recorded by B. and C. in their names, April 28, 1873. Afterward, in July, 1875, all the parties worked upon and developed the property. After the lode had been recorded D. located and pre-empted a part of the Silver Girdle lode under the name of the Burlington lode, but the conflict of title was settled by a conveyance by D. to B. and C. of 1,350 feet of the Burlington lode, which had been included in the Silver Girdle lode. B. and C. refused to give A. any interest in the lode, or account for the proceeds thereof. *Held*, that the contract between A., B. and C. was not within the Statute of Frauds, and could be enforced. *Held*, also, that the conveyance from D. to B. and C. did not impair the rights of A.

*Appeal from Second District, Deer Lodge County.*

KNOWLES, J., sustained the demurrer to the complaint. Hirbour declined to amend the same and judgment was entered for Reeding and Gassert, the defendants.

SHARP & NAPTON, for appellant.

The Statute of Frauds has no application to a contract of the character of the one in suit, and if it did, the part performance to the extent of the performance carries it out. *Gore* v. *McBrayer*, 18 Cal. 582; *Skillman* v. *Lachman*, 23 id. 198; *Duryea* v. *Burt*, 28 id. 577, *Settembre* v. *Putnam*, 30 id. 490; *Boucher* v. *Mulverhill*, 1 Mon. 306; Story on Part. 127–129; Sts. U. S. on Mineral Lands; Browne on Frauds, §§ 234–236.

This was a mining adventure, which was unknown to the law at the time of the enactment of the Statute of Charles II, 29; Yale on Min. Claims, 233; *Bradbury* v. *Barnes*, 19 Cal. 620. The Statute of Frauds is to prevent frauds and is never extended in its application to a new matter, so as to work a fraud, which would be the result in this case. 1 Story's Eq. Jur. (8th ed.), §§ 330, 331. It never applies to a mercantile transaction. In the case of an indorser, part performance takes it out of the statute. 2 Story's Eq. Jur. (8th ed.), § 1522; 3 Pars. on Cont. (6th ed.), 59–60.

The question fairly presented in this case is, whether a prospector, under a verbal contract of copartnership, when a discovery is made, shall make a race for the recorder's office to prevent other partners from acquiring title to the entire property.

W. W. DIXON, for respondent.

A contract for a partnership in real estate is within the Statute of Frauds and void unless in writing. Cod. Sts. 393, § 6; Story on Part., § 83; Pars. on Part. 368; 3 Pars. on Cont. (5th ed.) 155; *Pitts* v. *Waugh*, 4 Mass. 424; *Gray* v. *Palmer*, 9 Cal. 616; *Thorn* v. *Thorn*, 11 Iowa, 146; *Wilson* v. *Ray*, 13 Ind. 1; *Levy* v. *Brush*, 45 N. Y. 589; *Bird* v. *Morrison*, 9 Wis. 551.

The California cases cited by appellant do not decide the point in issue. It was there held under the old statute that mining

claims, placer and quartz, could be vested or conveyed without writing. In Montana, quartz claims are real estate.

The complaint does not show any such part performance of the alleged partnership contract as will take the case out of the Statute of Frauds, or authorize the court to decree a specific performance. There is no allegation of how much work appellant did on the lode, or its value, or that it was all he was required to do by the partnership contract. The allegations of the complaint may be true, and appellant may not have worked one hour on the lode. Appellant does not show that he performed, or offered to perform, his part of the contract. These are among the grounds of demurrer. These facts appellant must allege and prove to take the case out of the statute. 2 Estee's Pl. 483, §§ 27, 28; *Denniston* v. *Coquillard*, 5 McLean, 253; *Colson* v. *Thompson*, 2 Wheat. 336; *Edwards* v. *Estell*, 48 Cal. 194; *Joseph* v. *Holt*, 37 id. 250; *Mather* v. *Scoles*, 35 Ind. 1; *Chase* v. *Hogan*, 6 Bosw. 431.

If the demurrer was well taken upon any ground, the judgment should be affirmed. 3 Estee's Pl. 744.

The real question in this case is, whether a verbal contract of copartnership in real estate, with no sufficient acts or performance alleged to take the case out of the plain provisions of the Statute of Frauds, will be enforced by the court.

BLAKE, J. The action of the court below in sustaining the demurrer of the respondents to the complaint of the appellant is before us for review. The following facts appear in the complaint and must be taken as true upon this hearing. Hirbour, the appellant, and Reeding and Gassert, the respondents, entered into a verbal contract of copartnership in April, 1873, at Rocker City in this Territory, " for the purpose of prospecting for, locating, recording, pre-empting, developing and mining quartz lodes and other mining property in Montana Territory." Each party was to have an undivided third interest in said lodes and property, and pay for one-third of the labor and other expenses incurred in carrying on the business of the copartnership. Under this contract, the Silver Girdle lode was discovered by the

parties, but it was recorded in the names of the respondents by them April 23, 1873, when it should have been recorded in the names of the copartners. All the parties "worked upon and mined" this lode in July, 1875, and developed and "displayed great value" in the property. "Said work and labor were done and performed" by the parties "as copartners in obedience to, and under and by virtue of, said contract of copartnership." After the lode had been recorded, certain persons, Young and Rouderbush, located and pre-empted under the name of the Burlington lode a part of the Silver Girdle lode. The conflict respecting the titles to the property was compromised, and Young and Rouderbush conveyed by a deed to the respondents July 29, 1875, thirteen hundred and fifty feet of the Burlington lode, which was included within the boundaries of the Silver Girdle lode. The respondents refuse to give the appellant an interest in the property, and have extracted therefrom a large quantity of valuable ore. The copartnership has not been dissolved, and there has been no accounting between the parties.

The respondents demurred to the complaint upon the following grounds:

That the contract of copartnership was within the Statute of Frauds of this Territory and void; and that the complaint was ambiguous in failing to state the amount of the work which was done by the appellant upon the lode, or its value, or the time when it was done. The court below sustained the demurrer, and judgment was afterward entered for the respondents.

The respondents claim that the allegation of the complaint respecting the amount of the work performed by the appellant on the property is ambiguous, but we think that it should be deemed an averment that the appellant performed his part of the conditions of the contract of copartnership. When this allegation is controverted by the respondents, the appellant must establish on the trial "the facts showing such performance." Civ. Pr. Act, § 68. Therefore the examination of one question will enable us to determine this appeal. If the contract of copartnership is valid we are of the opinion that the complaint contains the allegations that are necessary to empower the court to enter a decree

requiring the respondents to convey to the appellant his interest in the property in controversy. Is this contract within the Statute of Frauds of this Territory? The following sections of the act relating to conveyances and contracts are pertinent to this inquiry:

" No estate or interest in lands other than for leases for a term not exceeding one year, or any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing." Cod. Sts. 393, § 6. " The term 'lands,' as used in this act, shall be construed as co-extensive in meaning with land, tenements, hereditaments and possessory land claims to public lands; and the terms 'estate' and 'interest' in lands shall be construed to embrace every estate and interest, present and future, vested and contingent, in lands as above defined." Cod. Sts. 394, § 22; 389, § 1.

It does not appear that the respondents have acquired the title of the United States to the property. Their interest in the lode may be lost or forfeited by abandonment, or a failure to comply with the laws of the mining district, the Territory or the United States. Counsel for both parties concede, what we consider a sound proposition, that the lode in dispute is real estate. *Melton* v. *Lambard*, 51 Cal. 258. We must apply to the contract set forth in the complaint the legal principles that govern copartnerships for the purchase and improvement of real property.

A partnership may be formed without any written articles between the parties. "After some question it seems to be settled that there may be a partnership for the buying and selling of land." Pars. on Part. 37, n. *f*. According to the weight of the authorities which are conflicting upon the question, the contract of such a partnership need not be reduced to writing to make it valid. Pars. on Part. 7, n. *d*. We do not intend to review the cases in which this subject has been examined, but will refer to a number of the most recent decisions which we have read.

The supreme court of Indiana holds in *Holmes* v. *McCray*, 51 Ind. 358, that a parol agreement for a partnership for the purpose of dealing in lands is not within the Statute of Frauds. Chief Justice BIDDLE, in the opinion, says: "As between the partnership and its vendors or vendees in the sale or purchase of lands, the statute in all cases would operate; but as between the partners themselves, when they are neither vendors nor vendees of one another, we cannot see how the statute can affect their agreements."

In New York, the same views are announced in *Chester* v. *Dickerson*, 54 N. Y. 1, and *Fairchild* v. *Fairchild*, 64 id. 471. Chief Justice WADE in his concurring opinion quotes from the opinion of the court in *Chester* v. *Dickerson, supra,* and this reference is therefore sufficient.[1] The same matter is considered in *Traphagen* v. *Burt*, 67 N. Y. 30, and the court comments on the case of *Levy* v. *Brush*, 45 id. 589, which is relied on by the respondents, and says: "In the case cited (*Levy* v. *Brush, supra*), the plaintiff had done no act of performance, advanced no money, nor parted with any thing under the contract, nor had the land been accepted, possessed and treated as joint property, nor improvements made upon the same accordingly, and the contract regarded as carried into effect. * * * Where a party has partly performed or parted with valuable property upon the faith of the contract, equity will not allow another party to retain property obtained upon the faith of a verbal contract to consummate a fraud by retaining the property and refusing to perform the contract."

These rules have been applied to the settlement of questions arising concerning quartz lodes. The case of *Murley* v. *Ennis*, 2 Col. 300, is directly in point. Mr. Justice WELLS says in the opinion: "If two or more go into the public domain together to search and explore for mines, with the agreement to occupy and develop such discoveries as may be made for the joint benefit, and such discovery, development and joint occupation follow, it is clear that, while each explorer becomes invested with his due

---

[1] *Post,* 25.

share and estate in the premises, no provision of the Statute of Frauds is violated. * * * Such contract of association is merely the creation of an agency in each of those contracting, and is no more a violation of law than a contract of partnership or association in any lawful calling."

In *Welland* v. *Huber*, 8 Nev. 203, three persons and Huber, in December, 1871, entered into a verbal agreement to prospect for and locate mines. All the parties were to be equal owners. In 1872, Huber located the Huber lode, 1,000 feet in length, and recorded in the name of each partner 200 feet and in his own name 400 feet. In the decision Mr. Justice BELKNAP says: "If Huber located the 400 feet in his own name in pursuance of the alleged partnership, he did so under an implied promise to convey to the complainants their interest in it upon request. The complainants at once acquired a right to a specific performance, and that right could be enforced in equity without a previous request."

In *Gore* v. *McBrayer*, 18 Cal. 582, Gore, McBrayer and others verbally agreed to prospect for quartz. The court held that the Statute of Frauds which requires an instrument in writing to create an interest in land, does not apply to the taking up of mining claims, and that a writing is not necessary to vest or divest title on locating mines. In *Settembre* v. *Putnam*, 30 Cal. 490, it is decided that, if mining partners, under a verbal agreement, claim and develop a lode upon the land of another, and authorize one of their number to buy the same for the benefit of all, and he procures a deed in his own name, he holds the legal title of the interests of his partners in trust for them.

After examining these cases we conclude that the contract of copartnership made by the appellant and respondents is valid and can be enforced. The name of the property in controversy, which may be called the Silver Girdle lode, or the Burlington lode, is immaterial. It was acquired and developed by the labor of the appellant and respondents under the contract, and is the property of the parties to this action. The transaction between the respondents and Young and Rouderbush, by which the same estate under another name was conveyed to the respondents, does not affect the rights of the appellant to his interest. The legal

title is vested in the respondents, but equity will treat them as trustees for all the partners. *Fairchild* v. *Fairchild, supra;* Pars. on Part. 363; Story on Part., § 92; Bainbridge on Mines (3d ed.), 395; *Dupuy* v. *Leavenworth,* 17 Cal. 262; *Miller* v. *Ball,* 64 N. Y. 286.

The demurrer to the complaint should have been overruled.

WADE, C. J., concurring. The question presented by this record is, whether or not, if two or more persons enter into a verbal agreement of copartnership in the business of prospecting for and discovering quartz claims, and when discovered, to acquire title thereto for the mutual benefit of the copartners, such contract, not being in writing, is within the Statute of Frauds and void.

Congress has granted to the citizens of the United States, and to those who have declared their intention to become such, the privilege of entering upon and exploring the public domain for the purpose of discovering valuable mineral deposits therein. The business therefore of searching or prospecting for quartz lodes or placers is entirely legitimate, largely engaged in in this Territory, and may be conducted either individually or in partnership. All kinds of property may be held in partnership. Quartz claims by our statute are made real estate, and there can be no question that it is entirely legitimate for parties to enter into a partnership for the purpose of trading, dealing and speculating in real estate. *Clagett* v. *Kilbourne,* 1 Black, 346; *Fall River W. Co.* v. *Borden,* 10 Cush. 458; Pars. on Part. 37; 3 Kent, 24, 28. The inquiry before us, however, has to do with the proposition as to how the existence of such a partnership shall be evidenced and established. Our statute has been cited by Mr. Justice BLAKE, *ante,* 19.

Did this verbal agreement of copartnership create, grant or declare any interest in real estate at the time it was entered into? Evidently not, for at that time, as to this copartnership there was no real estate in existence; neither of the partners then owned or had any interest in a quartz claim; such claim was yet to be searched for and found. There was nothing upon which

the agreement could operate. It created and declared the title to nothing at all. A quartz claim is not real estate until discovered and located, and a verbal agreement concerning an undiscovered and unknown claim is not and cannot be an agreement creating or disposing of an interest in real estate, and if not, such agreement is not within the statute.

This agreement contemplated that the parties would search for and find quartz claims, and when found, that they would comply with the provisions of the act of congress, whereby title could be acquired. But the agreement in and of itself did not create or declare a title to any property whatever. If by this agreement the parties had attempted to make a parol or verbal conveyance of land, or any interest therein, they would have utterly failed, for at the time the agreement was made they had no lands to convey. Evidently then it was not the object or purpose of this agreement to create, grant or declare any interest in real estate. How are the titles to quartz claims acquired, created or declared? First, a valuable mineral deposit must be found; second, it must be distinctly marked and located; third, $500 worth of work must have been performed upon the claim before a patent can be granted; fourth, after finding the lead, locating it, and performing the necessary amount of labor, an application may be filed in the local land office for a patent, and after publication of notice for sixty days, as the law requires, and no adverse claim being interposed, a patent may issue. But at the time of this agreement none of these things had been accomplished, no lead had been found, and it seems, therefore, reasonable to follow that the agreement did not attempt to create, grant, assign or declare any interest in real estate and is not within the Statute of Frauds.

We think the following authorities conclusively determine the proposition that a partnership may exist in reference to acquiring title to the sale and ownership of real estate, and that such partnership may be created by parol agreement.

In *Dale* v. *Hamilton*, 5 Hare, 369, the bill of the plaintiff alleged the parol agreement of copartnership with the defendants for the purpose of speculating in lands. The vice-chancellor in

deciding the case said : " When the proposition was first advanced by the plaintiff, I confess, it appeared to me, that to admit the argument to the extent contended for, would be virtually to repeal the Statute of Frauds, or nearly so." But upon a further examination of the authorities he held that the plaintiff might first prove, by parol, the existence of the partnership as an independent fact, and that being established, he might then show, by the same evidence, his interest in the lands, considered as the substratum or stock of the partnership. Pars. on Part. 7, n. *d.*

In *Smith* v. *Tarlton*, 2 Barb. Ch. 336, the bill stated that by the copartnership agreement, which was by parol, the complainant and the defendants entered into a partnership which was to continue three years, the business of which was to purchase a water privilege and site for a foundry in the village of Plattsburgh and to erect an iron foundry, or furnace thereon, and to carry on the business of manufacturing iron castings, etc., and that each of the copartners was to contribute a certain amount of funds to the capital of the firm ; that the parties all contributed money to the capital, and a site was procured and a foundry erected thereon by the copartners, but that the title to the land was taken in the name of the defendants only. The chancellor in the course of his decision said : " I cannot see that there is any validity in either of the objections raised by the counsel of the defendants to the parol agreement of copartnership. This was not, as the counsel supposes, an agreement which was not to be performed within one year, so as to require it to be in writing under the Statute of Frauds ; but it was the formation of an immediate partnership between the parties, which partnership was to continue three years unless sooner dissolved by the consent of such parties. In this State no written articles are necessary to constitute a copartnership which is to take effect immediately, although a written agreement might be necessary to bind the parties to enter into a future copartnership to commence after the expiration of a year. But even where there was a parol agreement to enter into a copartnership at a future day and specifying the terms of such copartnership, I apprehend that, if the parties went into copartnership at the prescribed time with-

out agreeing upon any new terms, the former parol agreement would be presumed to constitute the terms on which such partnership was entered into and carried on."

"Nor is the objection well taken that this partnership was invalid because a part of the business of the firm was to purchase real estate as a site for the foundry, and to erect a building thereon for the purpose of making iron castings, etc. The case of *Henderson* v. *Hudson*, 1 Mumf. 510, referred to by the defendants' counsel, was not a case of partnership, or of land purchased with partnership funds for the use of the copartnership firm. It was merely an attempt to create a trust by parol in lands purchased by an individual in his own name and with his own funds. But real estate purchased with partnership funds for the use of the firm, although the legal title is in the member or members of the firm in whose name the conveyance is taken, is in equity considered as the property of the firm for the payment of its debts and for the purpose of adjusting the equitable claims of the copartners as between themselves." The motion to dissolve the injunction for the reason that the bill did not state a cause of action was therefore denied.

In the case of *Chester* v. *Dickerson*, 54 N. Y. 1, the question was again decided. Counsel in their briefs in that case made the point that the lower court erred in holding that the partnership of the defendants in the lands in question could exist by parol, and cited authorities to support the proposition, to which the adverse counsel replied, citing authorities, and the court was called upon directly to decide the question, and by EARL, J., the court say "it cannot be questioned that two or more persons may become partners in buying and selling land. There is nothing in the nature or essence of a partnership which requires that it should be confined to ordinary trade and commerce, or to dealings in personal property. Story on Part., §§ 82, 83 ; Collyer on Part., §§ 3, 51 ; *Dudley* v. *Littlefield*, 21 Me. 418 ; *Sage* v. *Sherman*, 2 N. Y. 417 ; *Mead* v. *Shepard*, 54 Barb. 474 ; *Pendleton* v. *Wambersie*, 4 Cranch, 73 ; *Thompson* v. *Bowman*, 6 Wall. 316 ; *Hoxie* v. *Carr*, 1 Sumner, 173. KENT says : ' A partnership is a contract of two or more persons to place their

money, effects, labor and skill or some one or all of them in lawful commerce or business, and to divide the profit and share the loss in certain proportions, and that it is n t essential to a legal partnership that it be confined to commercial business. It may exist between attorneys, conveyancers, mechanics, owners of a line of stage coaches, artisans or farmers, as well as between merchants and bankers' (3 Kent's Com. 24, 28), and why may it not exist between dealers and speculators in real estate."

"But as it is claimed that the partnership in this case existed by parol before the execution of the written agreement, dated November 28, 1864, it is necessary to inquire whether a partnership in reference to lands can be formed and proved by parol. Upon this question there is considerable conflict in the authorities. On the one hand it is claimed that a parol agreement for such a partnership would be within the Statute of Frauds which provides that no estate or interest in lands shall be created, assigned or declared unless by act or operation of law, or by a deed or conveyance in writing subscribed by the party creating, granting, assigning or declaring the same; (the New York statute being in this regard the same as our own) and to this effect is the case of *Smith* v. *Burnham*, 3 Sumner, 345. On the other hand it is claimed that such an agreement is not affected by the Statute of Frauds, for that the real estate is treated and administered in equity as personal property for all the purposes of the partnership. A court of equity having full jurisdiction of all cases between partners touching the partnership property, it is claimed that it will inquire into, take an account of and administer upon all the partnership property whether it be real or personal, and in such cases will not allow one partner to commit a fraud or a breach of trust upon his copartner by taking advantage of the Statute of Frauds, and to this effect are the following authorities: *Dale* v. *Hamilton*, 5 Hare, 369; *Essex* v. *Essex*, 20 Beav. 449; *Bunnell* v. *Taintor*, 4 Conn. 568. A full discussion of the question is found in *Dale* v. *Hamilton*, and the reasoning and review of the cases there by Vice-Chancellor WAGRAM are quite satisfactory. The general doctrine is there laid down " that a partnership agreement between A. and B. that they

shall be jointly interested in a speculation for buying, improving for sale and selling lands may be proved without being evidenced by any writing signed by, or by the authority of the party to be charged therewith within the Statute of Frauds, and such an agreement being proved, A. or B. may establish his interest in the land, the subject of the partnership, without such interest, being evidenced by any such writing.' I am inclined to think this doctrine to be founded upon the best reason and the best authority. But whether it is or not is not very important to decide in this case. Most of the conflict in the authorities has arisen in controversies about the title to the real estate after the dissolution of the partnership or the death of one of the partners. But suppose two persons, by parol agreement, enter into a partnership to speculate in lands, how do they come in conflict with the Statute of Frauds? No estate or interest in land has been granted, assigned or declared. When the agreement is made no lands are owned by the firm, and neither party attempts to convey or assign any to the other. (As in the case at bar when the agreement was made no quartz claims had been discovered, none were owned by the firm, and neither party attempted to assign or convey to the other.) The contract is a valid one, and in pursuance of this agreement they go on and buy, improve and sell lands (as in the case we are considering, in pursuance of the agreement the parties go on and discover, and locate quartz claims). While they are doing this do they not act as partners and bear a partnership relation to each other? Within the meaning of the statute in such case neither conveys or assigns any land to the other, and hence there is no conflict with the statute. The statute is not so broad as to prevent proof by parol of an interest in lands; it is simply aimed at the creation or conveyance of an estate in lands without writing. If there was a parol agreement in this case before the written one, it was just like the one embodied in the writing, to wit, a partnership to purchase, lease and take the refusals of land and then sell, lease or work them for the joint benefit of the parties. This is not a controversy about the title to any of the lands taken or owned by the partners but it simply relates to the conduct of the defendants while they

were acting as partners, and in such a case the Statute of Frauds certainly can present no obstacle to relief." The court then go on to find as a matter of fact from the evidence, that there was a partnership existing between the parties; that such partnership was evidenced by a parol agreement; that the same was a valid partnership, although formed for the purpose of buying, selling and speculating in lands, and adjust the rights of the parties accordingly.

The case of *Traphagen* v. *Burt*, 67 N. Y. 30, is to the same effect. In that case the plaintiff and defendant made an oral agreement to engage in the business of buying and selling farms for their mutual benefit and at their joint risk. Under this agreement defendant bought two farms and took the deeds to himself and plaintiff jointly. He afterward purchased the farm in question but took the deed to himself alone, refusing to admit the plaintiff to any participation in the ownership, the facts being very similar to the case in hand, except in the case we are considering the plaintiff discovered the quartz lead and the defendants obtained the title thereto, and refused to admit the plaintiff to any participation in the ownership thereof. In deciding the case, which was an action brought to establish a trust in the defendant, Burt, in favor of the plaintiff, for one undivided half of the farm in question, the court say : " It is established by abundant authority in this State that a partnership may exist in reference to the purchase, sale and ownership of lands, and that it may be created by a parol agreement."

Upon these authorities and the reasons therefor, I rest the opinion that the complaint in this action contained a cause of action, and that the demurrer thereto should have been overruled.

KNOWLES, J., dissenting. I cannot assent to the opinion expressed by the majority of the court in this case and will present my views as briefly as I can for dissenting therefrom.

I do not deny but that a verbal partnership agreement may be formed for trading in real estate; but I contend that when one partner comes into a court and asks that real estate held exclu-

sively by one member of the firm in his name shall be decreed partnership property, and an interest therein decreed to the applicant, such partnership must then be evidenced by some note or memoranda in writing, or it will be held to be within the provisions of the Statute of Frauds, unless it clearly appears that this real estate was acquired with partnership capital for partnership purposes, in such a way as to make the partner in whose name the property is held a trustee for the partnership. It is said that a verbal partnership agreement to deal in lands creates no interests in lands if it has for its object the acquiring in the future such property. But when lands are acquired under such a partnership, and one of the partners takes a deed to the same in his own name, what does create an interest in this land in favor of the other partner but the verbal partnership agreement, if he has any interest at all in it? If a party to such an agreement comes into court and asks that he may be decreed an interest in this land, as in this case, as the basis of his action he must set up a verbal partnership agreement. I cannot see how there is any escape from the conclusion that under such circumstances an interest in land will be created by virtue of a verbal agreement. I cannot see why a partnership agreement should be treated as different from any other agreement. It is urged, however, that lands held by a partnership have none of the characteristics of real estate, but are treated as personal property in a court of equity, and from this it follows that a verbal partnership agreement is never called upon to create an interest in land, but in personal property only. To what extent is land held by a partnership treated in equity as personal property? I apprehend this to be the rule: When real estate is purchased with partnership capital and held for partnership uses, it is treated as personal estate in equity for these purposes and these only—the settlement of accounts between the partners, and the payment of partnership debts. When these are accomplished, it assumes the character of real estate and is subject to all its incidents. Pars. on Part. 382–385 ; *Dyer* v. *Clark*, 5 Met. 562. This question is elaborately discussed in a note to § 93, Story on Part., and I think the above conclusion reached. *Sigourney* v. *Munn*, 7 Conn. 11.

Take the most liberal opinions upon this subject, save *Holmes* v. *McCray*, 51 Ind. 358, and I am sure it will be found that they all hold that the real estate must be purchased with partnership funds and devoted to partnership uses, before it can be treated as partnership property and classed as personal estate.

I will now recur to the allegations of the complaint. It is alleged that the plaintiff and the defendants Reeding and Gassert entered into a verbal contract of copartnership for the purpose of prospecting, developing and mining quartz lodes and other mining property. That each was to have an undivided one-third interest in all mines discovered, pre-empted, located, recorded or mined, and were to share equally and alike in the labor and expenses in carrying out said purpose. That the partnership was to remain in force until dissolved by mutual consent. There is no allegation to the effect that they actually commenced operations under this contract. It is not shown that this mine was discovered by their joint labor, or located by their joint labor, or recorded at their joint expense. It is not shown that plaintiff has fully performed his part of this agreement. It is true that it is alleged that the said parties, plaintiff and defendants Gassert and Reeding, as such copartners, discovered what is now and was then known as the Silver Girdle lode. This is one of those allegations that may be and probably is a conclusion of law. It may be claimed that the plaintiff and defendants being partners, the act of one is the act of all.

Put the most favorable construction upon this allegation, and still it leaves out certain acts necessary for the acquiring of title from the government of the United States. For instance, there is no allegation that the plaintiff and defendants located this mine or recorded it, but that they discovered it. If A. and B. should discover a quartz mine, and A. should say to B., I want none of this lode, or should do nothing toward locating it, and B. should go on and locate it and record it, would it be possible that A. could come in and say, because we discovered this mine together, therefore I am entitled to one-half of it? The reason that equity treats real estate purchased with partnership funds for partnership purposes, partnership property, is because a trust arises in equity in this

property in favor of the firm.   It is upon the principle, that, if A. furnishes B. money with which to purchase land for him, or on their joint account, and B. takes this money and invests it in land and takes the deed in his own name, a trust arises concerning this land in A.'s favor, and B. will be compelled to recognize it in a court of equity, although there was no memoranda or note in writing by which the above agreement could be proved.   I think I am fully justified in saying, that, under the allegations in this complaint, it does not conclusively appear that there · is any trust in this quartz claim in favor of plaintiff for the reason that it does not appear that the title to the mine was acquired from the general government with partnership funds, that is, joint labor and expense.   And I hold that there is a further defect in this complaint if, as I claim, the true rule is that real estate purchased with partnership funds for partnership purposes is to be treated as personal property only for the purpose of settling accounts between partners, and the payment of partnership debts.   There is no allegation that the partnership is indebted to plaintiff in any amount for any cause.   There is no allegation that the partnership is indebted to other persons in any sums whatever for which plaintiff is liable.   There is an allegation that defendants are taking out large quantities of quartz and disposing of the same, but whether to a profit or not is not set forth. There is one other allegation I must notice in the complaint. It is alleged that plaintiff, through his agent, has worked and assisted in developing this mine, but this allegation cannot be construed as an allegation of funds used in acquiring the mine. In my judgment we are presented with the question whether a mere verbal agreement for a copartnership will entitle a person to an interest in lands, although it was not acquired with partnership funds, and there is nothing to show that the partnership is indebted to him or to other persons for which debts plaintiff is liable.   To hold that, by virtue of such a partnership agreement, a man may acquire an interest in land would be setting aside completely the Statute of Frauds and Perjuries in regard to creating an interest in land.   The weight of authority, it appears to me, is decidedly against allowing such a contract to create an

interest in land. Such was undu btedly the ruling in the case
of *Smith* v. *Burnham*, 3 Sumn. (C. C.) 435, and *Thorn* v.
*Thorn*, 11 Iowa, 146. The cases of *Hale* v. *Henrie*, 2 Watts, 143,
and *Pitts* v. *Waugh*, 4 Mass. 424, go further than I contend the
rule is. The case of *Gray* v. *Palmer*, 9 Cal. 616, was a much
stronger case for the applicant than the case presented here, but
the court held that an interest in land could not be created by a
verbal contract of copartnership to deal in real estate. Pars. on
Part. 381, in discussing this question says: "In like manner
the peremptory provisions of the Statute of Frauds would apply;
and even equity would feel itself obliged to pay some regard to
them. Hence, if a partnership were formed even to trade in
lands, and for nothing else, the lands when bought must not only
have an owner by legal title, and pass solely from him and solely
by a legal title, *but all contracts and agreements between the part-
ners themselves, as* well as between them and strangers, for the sale
' of lands, tenements and hereditaments, or any interest in or con-
cerning them' should be written and signed. But in this there are
conflicting views which we shall consider in the next section."

In the next section, he shows what these conflicting views are.
They are the conflicting views between what may be termed the
American rule and the English. The English rule treats part-
nership real property as personal property for all purposes. The
American rule treats the real property of a partnership as per-
sonal property for the purposes of settling partnership accounts
between partners, and the payment of partnership debts and no
further. Pars. on Part. 382–385. Hence, according to the Eng-
lish rule, the partnership being once established, then all property
acquired by the firm is treated in equity for all purposes as per-
sonal property and hence the Statute of Frauds does not apply.
But under the American rule, it is only personal property
for the purposes of settling partnership accounts and the pay-
ment of partnership debts. Hence, in order to treat real estate
as partnership personal property, there must be accounts to set-
tle between the partners or partnership debts, which I have
shown does not appear in this case, and hence this real estate
cannot be treated as personal property. I will now review for a
short space the cases relied upon by the majority of the court.

*Dale* v. *Hamilton*, 5 Hare's Ch. 368, is an English case, and perhaps the principal one that is relied upon as establishing the English rule. But, when fully considered, it will be found that it is a very different case from this and presenting much stronger equities, and further, that the court did not decide that a partnership had been formed, but referred the question to a jury; and ordered that certain written evidence should be introduced in this trial before the jury, in regard to this partnership, that showed conclusively that there was a partnership to deal in lands and in the very lands in dispute. The case of *Fall River W. Co.* v. *Borden*, 10 Cush. 474, shows that a partnership to deal in real estate, evidenced by the written evidence that appeared in the case of *Dale* v. *Hamilton*, was not within the Statute of Frauds. I think further that the cases cited in support of *Dale* v. *Hamilton* do not fully maintain the views of the court in that case. The case of *Chester* v. *Dickerson*, 54 N. Y. 1, certainly cannot be considered a case in point. There no interest in land was sought to be created by virtue of any partnership agreement. That was for an action for deceit against certain partners who had sold some oil lands. I do not suppose any one holds now that a simple (verbal contract of) partnership to deal in lands is within the Statute of Frauds.

It is only when an interest is sought to be created in land that such an agreement is within the Statute of Frauds. In this case, the court admits that all it said upon the subject of verbal partnerships was dicta and not necessary to the decision. The case of *Bunnell* v. *Taintor*, 4 Conn. 568, is not in point. That was a case of a partnership in the profits arising from buying and selling certain lands. The land was not to be considered as partnership property, but as the property of one member of the firm, and the partnership was to be confined to the profits of the sale. This certainly was not a parallel case. The case of *Smith* v. *Tarlton*, 2 Barb. Ch. 336, was a case where real estate was purchased by a partnership with partnership funds, for partnership purposes, and used as such, and was but an incident to a manufacturing enterprise. The courts have generally held that such real estate was partnership property, no matter in whose name held. If in the

name of one partner, he is a trustee of the firm. In this case, the object of the bill was to obtain a settlement of partnership accounts and concerns, and to restrain one of the defendants from misapplying partnership funds. The last sentence in that decision is as follows : "But real estate purchased with partnership funds for the use of the firm, although the legal title is in the member or members of the firm in whose name the conveyance is taken, is in equity considered as the property of the firm, *for the payment of its debts, and for the purpose of adjusting the equitable claims of the copartners as between themselves.*"

Judge STORY, in the case of *Smith* v. *Burnham*, 3 Sumn. C. C. 435, expressly declares such a case without the Statute of Frauds. The case of *Murley* v. *Ennis*, 2 Col. 300, is relied upon. That was not a case where a title was sought to be created in land by virtue of a verbal contract of partnership to prospect for mines, and locate the same. The court holds that such a contract is not within the Statute of Frauds. This I do not controvert; but when the court comes to discuss the right of Ennis to an interest in the mine discovered by Murley, it uses this language : "Nor does the interest or estate which is afterward acquired vest or inure by virtue of the agreement, but by the occupation and appropriation alone." The point the court makes in that case is, that Murley acted as the agent of Ennis in discovering and appropriating the mine for which he was a competent agent. The case, it will also be observed, was not one where an interest in land was sought to be created by virtue of a partnership agreement, but an action to recover a debt ; and it does seem that the right of Ennis to recover might have been placed upon different grounds from what the court did.

The only case I think that can be found which fully supports the views of the majority of the court is that of *Holmes* v. *Mc-Cray*, 51 Ind. 358, and that I have shown is decided upon the authority of a dicta, in the case of *Chester* v. *Dickerson*, 54 N. Y. 1, and which was not a case in point; the case of *Holmes* v. *McCray* and this stand, in my judgment, by themselves, and are not supported by authority or sound reasoning.

*Judgment reversed.*