## *In re* RANSOM.

*(District Court, S. D. New York.* June 28, 1883.)

1. BANKRUPTCY—EQUITABLE DOWER.
   Under the Revised Statutes of New York a widow is not entitled to equitable dower except in lands of which the husband was equitably seized at the time of his death, and has no interest in contracts of purchase which the husband aliened in his life-time; nor has she any inchoate dower unless the husband have a valid and recognizable equitable estate.

2. SAME—PARTNERSHIP PROPERTY—TITLE IN NAME OF PARTNER—TRUST.
   Where four out of six members of the firm of W. A. R. & Co. contributed the consideration for the purchase of valuable real estate which was afterwards used in the firm business, and the title, by the arrangement and concurrence of the four associates, was taken for convenience in the name of W. A. R. only, and the rents for many years were divided ratably among the four, according to their contributions of the purchase money, until the bankruptcy of all of them, when the property was transferred, first to a voluntary assignee and afterwards to the assignee in bankruptcy, *held* that, under the New York Revised Statutes, the other three associates had no recognizable equitable estate in the property, and that their wives had no inchoate right of dower therein. *Held, also,* that if the associates were regarded as partners in a particular purchase, still the property would be treated as personalty not subject to dower.

Petition for Allowance of Dower.

Butler, Stillman & Hubbard and J. Notman, for petitioners.

Marsh, Wilson & Wallace, for the assignee in bankruptcy, opposed.

BROWN, J. On the thirtieth of December, 1865, the premises known as 384 and 386 Broadway were conveyed to Warren A. Ransom for the consideration of $325,000. The sum of $200,000, part of the consideration money, was secured by the bond and mortgage of the grantee. The residue of the consideration was paid in cash by four out of the 'six persons who then composed the firm of W. A. Ransom & Co., in the following proportions: W. A. Ransom, 40 per cent.; A. P. Ransom, 40 per cent.; R. H. Boyd, 10 per cent.; and D. W. Geer, 10 per cent. The property was not purchased as the copartnership property of the firm of Ransom & Co., and was never intended as such, but as the separate property of the four persons who paid the consideration, and for their benefit, in the same proportions as their contributions to the consideration. W. A. Ransom was then unmarried; the others were married. On full conference and discussion among the four persons interested, it was determined that the title should be taken in the name of W. A. Ransom only. The property was occupied by the firm of W. A. Ransom & Co., who paid rent, which was divided among the four persons beneficially interested in the purchase. Several changes were afterwards made in the individuals composing the firm of Ransom & Co. About 1877 Mr. Geer transferred whatever interest he had in the property to the other three associates in some manner which does not fully appear.

About 1878 the firm of Ransom & Co., becoming insolvent, made a voluntary assignment for the benefit of their creditors, transferring their partnership as well as their individual property, which was executed by the three remaining associates interested in the property in question. Upon subsequent proceedings in bankruptcy an assignee was appointed, in whose favor the voluntary assignment under the state law was set aside, and all the property transferred to the assignee in bankruptcy.

On a subsequent sale of these premises by the assignee, objection to the title was made on the ground that the wives of A. P. Ransom and R. H. Boyd had, or might have, an inchoate right of dower in the equitable estate of their husbands in the property. The title, however, was passed, and the purchase money paid into the registry of the court, subject to any lawful claim of inchoate dower which the wives of A. P. Ransom and R. H. Boyd might have had in the real estate; and the wife of W. A. Ransom, who, in the mean time, had married, executed a release of her dower to the purchaser under an agreement approved by the court that the same should be without prejudice to her claim of dower in the proceeds of the sale, provided the wives of the other associates were held to be legally entitled to dower in the premises.

A petition having been filed for allowance of dower out of the purchase money deposited in the registry, a reference was ordered to the register in charge, by whose report, disallowing the claim, the above facts appear.

Before the revision of the statutes of New York it was well settled that there was no dower in a mere equitable estate. By the Revised Statutes, however, it was provided (vol. 1, p. 740, § 1) that "a widow shall be endowed of a third part of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage;" and other provisions provide for dower in certain equitable interests. 2 Rev. St. p. 374, §§ 63, 64; p. 112, §§ 71, 72.

In the case of *Hawley* v. *James*, 5 Paige, *318, 452, 453, it was held by the chancellor that by these provisions of the Revised Statutes the legislature "distinctly adopted the principle permitting the widow to receive equitable dower in the descendible equitable interests of the husband in the real estate which belonged to him at the time of his death;" but not as "against a grantee to whom the husband aliened it in his life-time." Id. 454.

In *Hicks* v. *Stebbins*, 3 Lans. 39, it was held that a widow was not entitled to dower in lands held under a contract of purchase, where the husband had aliened his interest in the contract prior to his death.

In *Church* v. *Church*, 3 Sandf. Ch. 434, where equitable dower was allowed, the husband had died in possession of certain real estate, seven-eighths of which he had purchased at the master's sale, for which he paid the consideration, but never obtained a deed.

In the present case it appears from the testimony that one of the reasons for taking the title in the name of W. A. Ransom only was because the other persons in interest were married, and it was deemed "more convenient" to have the title in the name of W. A. Ransom alone; and from this it would seem to have been the intention that the property should not be incumbered by claims of dower. No force, however, can be given to this circumstance, provided the wives are by law entitled to it.

The terms of the statute giving dower as above quoted are not confined to a seizin of a legal estate; but the more natural and probable construction would limit the words used to legal estates only, because the Revision was largely a codification or express enactment of the rules of law previously settled; and if an important change was intended, such as making wives dowable generally in all equitable estates, it would naturally be expected that such an intention would be indicated by words more explicitly and naturally expressing such an intended change. The words do not, however, forbid dower in equitable estates; and to the extent to which the legislature has in other ways indicated its intention to give dower in equitable estates, such equitable dower may be sustained. But this apparent intention extends no further than to equitable interests held by the husband at the

time of his death; and such is the express ruling in *Hawley* v. *James*, and in the other cases above cited.

In the present case the husbands of the petitioners, by their voluntary assignment and their acts of bankruptcy, followed by the due appointment of an assignee, have aliened all their interest in the premises in question during their life-time; as much so as if they had conveyed them by deed or sale to a purchaser.

2. In any view of the statute of this state as to dower, an essential condition before dower can attach is that the husband must at least be seized of an equitable estate of inheritance in the lands in which dower is claimed; and, in the present instance, I am satisfied that the husbands of the petitioners, under other provisions of the Revised Statutes of this state, never acquired any recognizable equitable estate whatever in the lands in question. In the notes of the revisers (5 Edm. Rev. St. 320) one of their declared purposes is stated to be to prohibit for the most part the separation of legal and equitable estates in land, as theretofore largely practiced and recognized by the courts. Express trusts were confined within narrow limits, which do not embrace the present case, and all beyond were declared unlawful. Trusts resulting by operation of law merely were, indeed, preserved, as was necessary to prevent frauds; but the most fruitful source of resulting trusts by voluntary acts of the parties, viz., the payment of the consideration by one person while the title was taken in another, was destroyed by the following express provisions, (1 Rev. St. p. 728, §§ 49, 51:)

"Every disposition of lands, whether by deed or devise, hereafter made, shall be directly to the person in whom the right to the possession and profits shall be intended to be vested, and not to any other, to the use of or in trust for such person; and if made to one or more persons, to the use of or in trust for another, no estate or interest, legal or equitable, shall vest in the trustee."

"Where a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made."

The exception in favor of creditors does not affect the present question. In the view of this case taken by the petitioners, viz., that it was in no respect a partnership transaction, but a purchase in common by the four individuals above named in their individual character, the above-quoted sections of the statute apply in full force. It is not a case of any fraud or breach of trust, such as arises where an agent intrusted with his principal's money wrongfully takes the title in his own name, in which case, to remedy fraud, a trust results in favor of the principal by operation of law. 1 Rev. St. p. 728, § 54.

The title here was taken in the name of W. A. Ransom by the voluntary and deliberate concurrence of all the parties concerned, and, as it appears, from considerations of supposed convenience. The claims of the petitioners, moreover, as to their husbands' interests, rest wholly upon parol testimony, save only some entries upon

the partnership books charging the individuals with certain moneys, corresponding in amount with the shares of the consideration paid as above stated, and some divisions of rents among them in similar proportions; while the statute provides (2 Rev. St. p. 134, § 6) that—

"No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent, thereunto authorized by writing."

Under such circumstances, to hold that there was a resulting trust in W. A. Ransom in favor of his associates in the purchase to the extent of the proportion of the consideration paid by them, or that any equitable estate whatever vested in them, would be to disregard and nullify a statute which expressly enacts the contrary in words as unequivocal as the English language affords. *Garfield* v. *Hatmaker*, 15 N. Y. 478.

The recent case of *Hurst* v. *Harper*, 14 Hun, 280, involved essentially the same question, and it was there held that the person who paid the consideration acquired no equitable estate in the premises; and upon this view of the case no right of dower can be sustained.

Transactions like the one in question are liable to give rise to embarrassing questions, and the oral testimony as to the understanding of the parties would be very likely to vary considerably, and honestly so, according to the exigencies of the occasion; the leading and controlling idea, doubtless, being, in the absence of any forecast of circumstances or definition of legal rights at the time of the purchase, that the parties should all deal fairly and honorably by each other, as co-owners, in proportion to the consideration paid by each, and with equal proportionate rights in the management and disposition of the property, and with similar mutual responsiblities. Had the building been burned down, without insurance recoverable, and a deficiency arisen upon the bond given by W. A. Ransom, he would have expected the others to bear their share of the loss and deficiency. Had the property been sold while the associates were solvent, each would have claimed, and doubtless received, his share of the net proceeds. Had W. A. Ransom insisted on selling the property in opposition to the judgment or wishes of all the rest of his associates, that would doubtless have been regarded as a breach of the original understanding; and in case of serious damage to the property by fire, or of its destruction, the question of selling or of rebuilding, and, if the latter, then of the mode and manner, and of the necessary advances of money or capital for that purpose, would doubtless have involved the assent and joint action of all the associates. The only legal view of the relations of the parties which would afford any near approach to a solution of the questions liable to arise out of the transaction in

harmony with the testimony; and the presumed intention of the parties, would be that of a partnership among the four associates themselves in the purchase, management, and disposition of this property; although no such relation is claimed by either party to this controversy. Such a partnership may exist as to purchases of land, and be supported by parol testimony only; and even in regard to a particular transaction only, if such be the intention. *Fairchild* v. *Fairchild*, 64 N. Y. 471; *Traphagen* v. *Burt*, 67 N. Y. 30; *Chester* v. *Dickerson*, 54 N. Y. 1; *Smith* v. *Danvers*, 5 Sandf. 669. In that case, however, the property, for the purposes of the partnership, is deemed personalty, and on the death of one of the partners does not descend to his heirs in equity, but remains partnership assets in the hands of the surviving partners till the partnership is wound up; and, as personalty, in equity, it is not subject to dower. In either point of view, therefore, the husbands of the petitioners had no legal or equitable estate of inheritance in the premises as realty, and the register's report denying the petition should be affirmed.